MARTHA L. WALTERS, OSB #77315
*mwalters@wczonline.com*
WALTERS CHANTI & ZENNACHÉ, P.C.
245 E. 4th Avenue
Eugene, OR  97401-2429
541.683.2506
541.683.3149 (Facsimile)

THANE W. TIENSON, P.C., OSB #77374
*ttienson@landye-bennett.com*
LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Ste. 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (Facsimile)

RALPH J. TEMPLE*
*Rtemple1340@aol.com*
150 Myer Creek Rd.
Ashland, OR  97520
541.482.9868
541.488.4907 (Facsimile)

ARTHUR B. SPITZER*
*artspitzer@aol.com*
American Civil Liberties Union of the National
Capital Area
1400 20th Street, N.W., Ste. 119
Washington, D.C.  20036
202.457.0800
202.452.1868 (Facsimile)

*Attorneys for Plaintiffs on Behalf of the ACLU Foundation of Oregon, Inc.*

*Motion to appear *pro hac vice* pending and filed simultaneously with this Complaint

FILED'06 JUL 06 12:21USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MOSS, LESLEY ADAMS,
BETH WILCOX, RICHARD ROYER, LEE
FRANCES TORELLE, MISCHELLE

O6-3045-CO

Page 1 – Class Action Complaint

*Rec 646*

ELKOVICH and ANNA BOYD,
individually and on behalf of a class of
persons similarly situated, and JACKSON
COUNTY PACIFIC GREEN PARTY,

     Plaintiffs,

  v.

UNITED STATES SECRET SERVICE of
the Department of Homeland Security,
RALPH BASHAM, Director of the United
States Secret Service, in his official and
individual capacities, TIM WOOD, United
States Secret Service Agent, in his official
and individual capacities ROB SAVAGE,
United States Secret Service Agent, in his
official and individual capacities, JOHN
DOE 1, United States Secret Service Agent,
in his official and individual capacities,
participating in these actions and known to
the Defendant Secret Service, but unknown
at this time to Plaintiffs, DAVID TOWE,
Chief of Police of Jacksonville, Oregon, in
his official and individual  capacities, CITY
OF JACKSONVILLE, a municipal
corporation of the State of Oregon, STATE
OF OREGON, RON RUECKER,
Superintendent of the Oregon State Police,
in his official and individual capacities,
KURT BARTHEL, Captain of the
Southwest Regional Headquarters of the
Oregon State Police, in his official and
individual capacities, ERIC RODRIGUEZ,
former Captain of the Southwest Regional
Headquarters of the Oregon State Police, in
his official and individual capacities, MIKE
WINTERS, Sheriff of Jackson County, in
his official and individual capacities,
JACKSON COUNTY, a municipal
corporation of the State of Oregon, JOHN
DOES 2-20, that is, the commanding
officers of other law enforcement agencies
of public bodies participating in these
actions, in their individual and official
capacities, known to the identified
Defendants, but unknown at this time to
Plaintiffs, and MUNICIPAL DOES, the
public bodies employing defendants John
Does 2-20,

     Defendants.

Case No. _____

**CLASS ACTION COMPLAINT**
**(Violation of United States Constitution;**
**§ 1983; Violation of Oregon Constitution;**
**Assault and Battery • False Imprisonment •**
**Negligence)**

**DEMAND FOR JURY TRIAL**

Page 2 – Class Action Complaint

Plaintiffs allege as follows:

## INTRODUCTION

1.     This is a class action, pursuant to the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 5 U.S.C. § 702, the Oregon Constitution, Article I, Sections 8, 9, 20 and 26, and the common law, seeking damages and injunctive and declaratory relief against the Defendants for unconstitutional, unlawful, and tortious actions against the Plaintiffs and Plaintiff Class, growing out of and related to Defendants' disrupting a lawful assembly and protest demonstration by Plaintiffs and Plaintiff Class in Jacksonville, Oregon on October 14, 2004.

2.     Individual Plaintiffs are citizens of the United States and residents of Oregon who were in Jacksonville, Oregon, on October 14, 2004, assembled on the public sidewalks in front of and across the street from an inn where President George W. Bush was present, and conducting a demonstration (hereafter "the demonstration") to protest the President's policies. Plaintiff Jackson County Pacific Green Party (hereafter "Green Party") joins this action on behalf of its members, some of whom were participants in the demonstration. Plaintiffs were exercising their First Amendment rights by demonstrating peacefully and in full accordance with the law when, without provocation or lawful basis, and without reasonable or adequate warning, the Defendants, by physical force, compelled Plaintiffs to vacate the sidewalks which by right they had chosen for their demonstration. The Defendants, in addition to unlawfully and forcefully moving the Plaintiffs, failed to give them an adequate warning and opportunity to move of their own volition. Some Defendants physically assaulted members of the Plaintiff Class by pushing them, striking them with clubs and firing pepperspray bullets into the assemblage. The individual named Plaintiffs, each of whom was protesting in Jacksonville and each of whose Constitutional rights were violated by the Defendants, accordingly bring this action under the United States Constitution, 42 U.S.C. § 1983, the Oregon Constitution and the common law to vindicate their own civil rights and the civil rights of the class.

3.    Plaintiffs seek declaratory and injunctive relief prohibiting the United States Secret Service and Defendants Basham, Wood, Savage and John Doe 1 (hereafter "Secret Service Defendants"), Defendants State of Oregon, Ruecker, Barthel and Rodriguez (hereafter "State Police Defendants"), the other Defendants (hereafter "Local Police Defendants"), and all persons acting as their agents or in concert with them, from engaging in the practice of or continuing a pattern and practice of, or requesting or encouraging others to engage in the practice of:

3.1    Barring or forcing a lawful assembly of people from any area where they have a lawful right to assemble, where there is no reasonable security reason to so bar or force them;

3.2    Barring or forcing a lawful assembly of people from areas where other unscreened members of the public are allowed to congregate or be present;

3.3    Barring or forcing anti-government demonstrators from areas where pro-government demonstrators are allowed to be present;

3.4    Using excessive force to move nonviolent persons;

3.5    Using riot-geared officers at nonviolent demonstrations; and

3.6    Using non-lethal weapons or any form of chemical agents against nonviolent demonstrators.

4.    Plaintiffs also seek an award of compensatory and punitive damages for violation of their Constitutional rights, as well as for physical injuries, pain and suffering, against the individual Secret Service Defendants in their individual capacities; the individual State Police Defendants in their individual capacities; the individual Local Police Defendants, including the individual John Doe Defendants, in their individual capacities; and against Defendants Jackson County, the City of Jacksonville and the Municipal Does.

## JURISDICTION

5.    This action is brought pursuant to the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), 5 U.S.C. § 702 and 42 U.S.C. § 1983.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## PARTIES

### Plaintiffs

7.    At all times material hereto, Plaintiff Michael Moss (hereafter "Plaintiff Moss") was a resident of Jacksonville, Oregon, participating in the demonstration.  Plaintiff Moss was struck with clubs and shot with pepperspray bullets by police officers employed by or under the supervision or control of the State and Local Police Defendants.

8.    At all times material hereto, Plaintiff Lesley Adams (hereafter "Plaintiff Adams") was a resident of Jacksonville, Oregon, participating in the demonstration.

9.    At all times material hereto, Plaintiff Beth Wilcox (hereafter "Plaintiff Wilcox") was a resident of Shady Cove, Oregon, participating in the demonstration.

10.    At all times material hereto, Plaintiff Richard Royer (hereafter "Plaintiff Royer") was a resident of Trail, Oregon, participating in the demonstration.  Plaintiff Royer had a pre-existing asthma condition and was injured by the chemical agents in the bullets used by police officers employed by or acting as agents of the State and Local Defendants.

11.    At all times material hereto, Plaintiff Lee Frances Torelle (hereafter "Plaintiff Torelle") was a resident of Ashland, Oregon, participating in the demonstration.  At the time of the demonstration, Plaintiff Torelle was a minor.  Plaintiff Torelle was separated from the adults who accompanied her to the demonstration and was injured by the chemical agents used by police officers employed by or acting as agents of the State and Local Defendants.

Page 5 – Class Action Complaint

12.    At all times material hereto, Plaintiff Mischelle Elkovich (hereafter "Plaintiff Elkovich") was a resident of Ashland, Oregon, and was a co-organizer of and participated in the demonstration.

13.    At all times material hereto, Plaintiff Anna Boyd (hereafter "Plaintiff Boyd") was a resident of Ashland, Oregon, and was a co-organizer of and participated in the demonstration. Plaintiff Boyd is allergic to pepperspray and was injured by the chemical agents in the bullets used by police officers employed by or acting as agents of the State and Local Police Defendants.

14.    The Jackson County Pacific Green Party is an unincorporated association and a political party in Jackson County, Oregon, some of whose members participated in the demonstration, and whose members, at the encouragement of the party, regularly engage in peaceful demonstrations in Jackson County, in other parts of Oregon, and around the country, including at public appearances by senior federal officials protected by the United States Secret Service.

Defendants

15.    Defendant United States Secret Service of the Department of Homeland Security (hereafter "Defendant Secret Service") is and at all times material hereto was the federal agency responsible for providing security for the President and Vice President of the United States and certain other senior federal officials.

16.    Defendant Ralph Basham (hereafter "Defendant Basham") is and at all times material hereto was the Director of the United States Secret Service, acting within the scope of his employment and under color of law, and responsible for directing the operations of the Secret Service and supervising all Secret Service agents.

17.    Defendants Tim Wood (hereafter "Defendant Wood"), Rob Savage (hereafter "Defendant Savage"), and John Doe 1 (hereafter "Defendant John Doe 1") at all times material hereto, were Secret Service agents at the scene of the demonstration, acting within the scope of

Page 6 – Class Action Complaint

their employment and under color of law, assigned to provide security for the President, and directing, requesting and communicating with the other Defendants in their operations related to the demonstration.

18.    Defendant David Towe (hereafter "Defendant Towe") is and at all times material hereto was, the Chief of the Jacksonville Police Department, acting within the scope of his employment and under color of state law, and responsible for directing the operations of the Jacksonville Police Department and supervising the law enforcement officers and agents acting under his authority, as well as law enforcement officers of other agencies who were at the scene of the demonstration to assist and support Defendants Towe and the City of Jacksonville.

19.    Defendant City of Jacksonville (hereafter "Defendant Jacksonville") is a duly organized municipal corporation under Oregon law, and a public body liable for the tortious conduct of its agents and employees pursuant to ORS 30.260(4) and 30.265(1).    Defendant Jacksonville employs Defendant Towe.

20.    The Defendant State of Oregon (hereafter "Defendant State of Oregon") is a public body, and, acting through one of its departments, the Oregon State Police, is responsible for the coordination of Oregon's public safety resources, including the state and local police response to the demonstration.

21.    Defendant Ron Ruecker (hereafter "Defendant Ruecker") is and at all times material hereto was, the Superintendent of the Oregon State Police, acting within the scope of his employment and under color of state law, and responsible for directing the operations of the Oregon State Police and supervising the law enforcement officers and agents acting under his authority.

22.    Defendant Kurt Barthel (hereafter "Defendant Barthel") is the Captain of the Southwest Regional Headquarters of the Oregon State Police, acting within the scope of his employment and under color of state law, and responsible for directing the operations of said headquarters and supervising the law enforcement officers and agents acting under his authority.

Page 7 – Class Action Complaint

23.    On October 14, 2004, Defendant Eric Rodriguez (hereafter "Defendant Rodriguez") was Captain of the Southwest Regional Headquarters of the Oregon State Police acting within the scope of his employment and under color of state law, and responsible for directing the operations of said headquarters and supervising the law enforcement officers and agents acting under his authority.

24.    Defendant Mike Winters (hereafter "Defendant Winters") is and at all times material hereto was, the Sheriff of Jackson County, acting within the scope of his employment and under color of state law, and responsible for directing the operations of the Jackson County Sheriff's Office and supervising the law enforcement officers and agents acting under his authority.

25.    Defendant Jackson County (hereafter "Defendant Jackson County") is a political subdivision of the state of Oregon and is a public body liable for the tortious conduct of its agents and employees pursuant to ORS 30.260(4) and 30.265(1).  Defendant Jackson County employs Defendant Winters.

26.    Defendants John Does 2-20 are the commanding officers of, and Defendant Municipal Does are the governmental bodies employing, other law enforcement agents participating in the actions of the identified Defendants taken against Plaintiffs during the demonstration, which Defendants' identities are known to the identified Defendants, but unknown at this time to Plaintiffs.  At all relevant times Defendant John Does 2-20 were acting under color of state law and acting within the scope of their authority.

27.    The true names of all John Doe and Municipal Doe Defendants shall be substituted and this Complaint shall be amended when their identities are established during discovery.

28.    At all times material hereto, the term "Secret Service Defendants" refers to the Defendant Secret Service, individual defendants Basham, Wood and Savage and unidentified John Doe 1.

29.    The term "State Police Defendants" refers to the Defendants State of Oregon and individual defendants Ruecker, Barthel, and Rodriguez.

Page 8 – Class Action Complaint

30.    The term "Local Police Defendants" refers to the City of Jacksonville, Jackson County and individual Defendants Towe and Winters and John Does 2-20 and the Municipal Doe Defendants.    The term "Police Defendants" refers collectively to the "State Police Defendants" and the "Local Police Defendants."

## CLASS ALLEGATIONS

31.    Individual Plaintiffs bring this suit on behalf of themselves and as a class action pursuant to the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the class of all persons, adults and children, assembled on, or denied access to assemble on, or forced to move away from, the sidewalks adjacent to and across the street from the Jacksonville Inn in Jacksonville, Oregon, on the evening of October 14, 2004.

32.    On information and belief, the class includes approximately 200 persons, making joinder of all class members impracticable.

33.    Questions of law and fact common to members of the class include:

33.1    Whether the Defendants had a lawful basis to order the class to move away from the public sidewalks where they were assembled and exercising First Amendment rights;

33.2    Whether the conduct of the class presented a clear and present danger to justify taking law enforcement action interfering with the class's exercise of First Amendment rights;

33.3    Whether the class as a whole was peaceful and orderly at the time that the Defendants physically assaulted class members by pushing them, striking them with clubs, and firing pepperspray bullets into the assemblage;

33.4    Whether, inasmuch as an assemblage of Bush supporters was gathered in a pro-Bush demonstration in the same vicinity, and many unscreened guests, diners, and other persons were inside the Jacksonville Inn and the fenced patio area where the President was dining, and both the pro-Bush demonstrators and the guests and diners

Page 9 – Class Action Complaint

were in as much or greater proximity to the President as the members of the Plaintiff Class assembled outside the Inn, and none of the groups other than the Plaintiff Class were ordered or made to move, the Defendants' decision to move and to use force against the Plaintiff Class and their action in doing so was based on the content of the speech of the class rather than security considerations;

33.5    Whether the Police Defendants gave the class members an adequately intelligible order to disperse and a reasonable opportunity to do so prior to taking physical action against the class;

33.6    Whether the Defendants had a lawful basis to employ physical force against the class, including forceful shoving, firing pepperspray bullets into the assemblage and striking demonstrators with clubs and whether the Defendants' actions in doing so constituted excessive force;

33.7    Whether there was unjustified firing of pepperspray bullets into the assemblage and whether that constituted excessive force;

33.8    Whether the Defendants lacked reasonable grounds to believe and lacked good faith belief that the class had violated any laws or that the class was engaged in any conduct that justified ordering them to move, moving them, and moving them with physical force;

33.9    Whether the Defendants' actions violated the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, the Oregon Constitution, Article I, Sections 8, 9, 20 and 26, and state common law rights of the class;

33.10    Whether the Secret Service Defendants have engaged in a nationwide pattern and practice of unconstitutionally creating excessively large security zones around its protectees that are not based on security criteria; and

33.11    Whether the Secret Service Defendants have engaged in a nationwide pattern and practice of unconstitutionally excluding anti-government demonstrators from

traditional public forums where pro-government demonstrators, and other unscreened members of the public, are allowed to congregate.

34.    The named Plaintiffs' claims are typical of the claims of all members of the class. The interests of the named class representatives are not antagonistic to and are aligned with the interests of the class because each named Plaintiff's claim stems from the same events that form the basis of the class claims and is based upon the same legal or remedial theory. The named Plaintiffs will fairly and adequately protect the interests of members of the class. Plaintiffs are represented by counsel competent to prosecute this civil rights class action.

35.    Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to damages.

36.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment will be more efficient, convenient and desirable than individual litigation of numerous claims. The class is readily defined and is manageable, and prosecution of a class action will eliminate the possibility of repetitious litigation.

# FACTS

## The Forcible Breakup of the Anti- Bush Demonstration

37.    On October 14, 2004, President George W. Bush made a campaign appearance in Central Point, Oregon. President Bush was scheduled to spend the evening at the Jacksonville Inn Honeymoon Cottage located on Main Street, west of Third Street, and south of California Street, approximately two blocks from the Jacksonville Inn, in Jacksonville, Oregon.

38.    Plaintiffs Elkovich and Boyd organized a demonstration to take place in Jacksonville, Oregon on the afternoon and evening of October 14, 2004. The demonstrators planned to gather and demonstrate as close as possible to the President's destination in Jacksonville, Oregon. The demonstrators planned to gather during the afternoon in Griffin Park, located on South Fifth Street in Jacksonville, about two blocks from the Jacksonville Inn, then, beginning at about

Page 11 – Class Action Complaint

5:30 PM, to march from Griffin Park to the sidewalks in front of and across from the Jacksonville Inn.

39.    Prior to the demonstration, Plaintiff Elkovich spoke separately with Defendant Towe, Chief of the Jacksonville Police, and with Defendant Winters, Sheriff of Jackson County. Plaintiff Elkovich informed these Defendants of the details of the planned demonstration and the route the demonstrators planned to follow.  Plaintiff Elkovich told these Defendants that parents and their young children were expected to participate, that she wanted to avoid any possible problems, and that the demonstration was to be peaceful and law-abiding, with handouts to participants so informing them.  Plaintiff Elkovich also emphasized that due to the law-abiding nature of the gathering, riot-geared police would not be necessary and asked that they not be present.  Defendant Towe assented to the route and location of the demonstration and said he did not plan to use riot-geared police.

40.    Plaintiff Elkovich asked Defendant Towe to be accessible to her for coordination purposes at the scene of the demonstration.  Defendant Towe declined, and did not propose an alternative means for the police to maintain coordination with demonstration leaders during the demonstration.

41.    Defendant Winters told Plaintiff Elkovich that protecting the rights of demonstrators was one of his priorities and that officers in riot gear would be in discreet locations, but not deployed unless needed.   Defendant Winters assented to the route and location of the demonstration and assured Plaintiff Elkovich that if demonstrators stayed on the sidewalks, there would not be any problems.  Defendant Winters did not propose any means for the police to maintain coordination with demonstration leaders during the demonstration.

42.    Beginning about 5:00 PM on October 14, 2004, Plaintiffs and Plaintiff Class, consisting of about 200 anti-Bush demonstrators, assembled in Griffin Park in Jacksonville, Oregon.

Page 12 – Class Action Complaint

43.    In Griffin Park, Plaintiff Boyd told the assembled anti-Bush demonstrators of the demonstration plan, that the plan had been discussed with Defendants Towe and Winters, that Defendants Towe and Winters had assured Plaintiff Elkovich that the demonstrators would not be disturbed if they remained on the sidewalks, and that there was to be no disorder.

44.    The State and Local Police Defendants' police officers were located throughout downtown Jacksonville.  At about 6:00 PM, the anti-Bush demonstrators, in accordance with the planned demonstration and the route which Plaintiff Elkovich had cleared with Defendants Towe and Winters, left Griffin Park and proceeded to California Street between Third and Fourth Streets where the Jacksonville Inn was located.

45.    Plaintiffs and Plaintiff class assembled in front of the Jacksonville Inn on the sidewalks on both the north and south sides of California Street, and conducted their demonstration with chants, slogans and signs.  All class members were orderly, interacted with police without incident, and remained on the sidewalks, allowing traffic to move easily on California Street.

46.    Assembled nearby, just west of Third Street on the north side of California Street, was a group of pro-Bush demonstrators (hereafter "pro-Bush demonstrators"), also chanting and exhibiting signs.  Interactions between the class members and the pro-Bush demonstrators were courteous and even jovial.

47.    The respective locations of the group of pro-Bush demonstrators and the Plaintiff Class of anti-Bush demonstrators are shown on the following diagram:

/ / / / /

/ / / / /



48.     On information and belief, while the President was en route to Jacksonville, he decided to dine in the Jacksonville Inn on California Street.

49.     Shortly after 7:00 PM, just prior to the President's arrival at the Jacksonville Inn, a group of the State and Local Police Defendants' police officers dressed in riot gear cleared the alley directly behind the Jacksonville Inn.  In front of the Jacksonville Inn, the State and Local Police Defendants' police officers began restricting the movements of some of the members of Plaintiff Class, not allowing them to cross streets or to leave sidewalks, and preventing them from joining the members of Plaintiff Class assembled on the sidewalks in front of and across the street from the Jacksonville Inn.

50.     On information and belief, President Bush and his party arrived at the back of the Jacksonville Inn at about 7:15 PM, and the President entered the back patio of the Inn through the back patio door and began dining in the fenced patio.  Also present inside the Inn and the

patio were dozens of guests and diners. On information and belief, Defendants did not screen these persons or order or force them to leave the vicinity.

51.    On information and belief, fifteen minutes later at about 7:30 PM, after class members' anti-Bush chants and slogans could be heard within the patio where the President was dining, Secret Service Defendants Wood, Savage and John Doe 1 requested or directed Defendant Towe and the other Police Defendants to clear California Street of all persons between Third and Fourth Streets, that is, the members of the Plaintiff Class, and to move them to the east side of Fourth Street. The Defendant Secret Service agents told Defendant Towe and the Police Defendants that the reason for this request was that they did not want anyone within handgun or explosive range of the President.

52.    The pro-Bush demonstrators and the unscreened guests and diners were located within the same or in more accessible vicinity to the President than was the Plaintiff Class. Defendants Wood, Savage and John Doe 1 did not direct or request Defendant Towe or the other Police Defendants to move or screen the pro-Bush demonstrators or the unscreened guests and diners.

53.    At approximately 7:45 PM, the Police Defendants formed a line of riot-geared police officers on Third Street blocking California Street. Behind them was an armored personnel carrier. The Police Defendants made amplified announcements, unintelligible to many class members, that the assembly was now unlawful, and ordered Plaintiffs and Plaintiff Class to move from the sidewalks where they were assembled to the east side of Fourth Street. The Police Defendants failed to contact Plaintiffs Elkovich or Boyd, the known leaders of the anti-Bush demonstration, made no effort to coordinate with them and took actions that prevented them from assisting in communicating with the Plaintiff Class.

54.    Then, without attempting to determine whether the assemblage understood the announcements, and without allowing time for the class of about 200 persons crowded on the sidewalks to move, the Police Defendants and their police officers forced the anti-Bush

Page 15 – Class Action Complaint

demonstrators to move east along California Street, in some cases by violently shoving class members, striking them with clubs and firing pepperspray bullets at them.

55.    The Police Defendants continued forcefully to move class members from where they were demonstrating, using clubs, pepperspray bullets, and forceful shoving, east along California Street until they had all crossed Fourth Street, and then to the east side of Fifth Street.

56.    After moving the class members across Fifth Street, the Police Defendants divided the class members into two groups, encircling each group and preventing class members from leaving the area.  Some class members, including those with young children, were attempting to leave the area.  Several families had become separated, including children, some of whom were lost, frightened and traumatized as a result of the police actions.

57.    During the entire time these actions were being taken against class members, the Defendants did not take action to move the pro-Bush demonstrators or the unscreened guests and diners inside the Jacksonville Inn and patio.

**The Secret Service Pattern And Practice**

58.    On information and belief, the actions of the Secret Service Defendants in the episode at the Jacksonville Inn on October 14, 2004, were part of an officially authorized pattern and practice to employ or assist in employing, or directing, requesting, or encouraging state and local authorities to employ or assist in employing, the pattern and practices described in paragraph 3 of this Complaint.

59.    Defendants Secret Service and Basham have promulgated or caused to be promulgated written guidelines, directives, instructions and rules which purport to prohibit Secret Service agents from discriminating between anti-government and pro-government demonstrators, and between demonstrators and members of the public not engaged in expressive assembly.

60.    On information and belief, the aforesaid documents described in paragraph 59 of this Complaint do not represent the actual policy and practice of the Secret Service.  Despite
Page 16 – Class Action Complaint

numerous episodes and complaints, and several lawsuits, concerning the aforesaid officially authorized pattern and practices specified in paragraph 3 of this Complaint, Secret Service agents have engaged in such actions and have not been disciplined or corrected for engaging in such actions.

61.    On information and belief, the Secret Service documents described in paragraph 59 of this Complaint are a sham, designed to conceal and immunize from judicial review the aforesaid unlawful and unconstitutional pattern and practices.

## INJURIES

**Compensable Injuries**

62.    As a result of the actions of Defendants, the Plaintiff Class members suffered damages in the form of loss of their rights under the United States Constitution, First, Fourth, Fifth and Fourteenth Amendments, the Oregon Constitution, Article I, Sections 8, 9, 20, and 26, and their common law rights, and physical and emotional injuries, pain and suffering.  The experience was especially traumatic, both physically and emotionally, for the children, some of whom are now fearful about attending future demonstrations and of police officers.

**Irreparable Injuries**

63.    Plaintiffs, Plaintiff Class members and Green Party members desire and intend to continue demonstrating peacefully in proximity to federal officials who are protected by the Secret Service, both in Jackson County and elsewhere.  It is likely and foreseeable that Plaintiffs, Plaintiff Class members and Green Party members will again be harmed by the practices described in this Complaint.

64.    Plaintiffs, Plaintiff Class members and Green Party members are under a real and immediate threat that, unless the Secret Service Defendants and the State and Local Police Defendants are enjoined from doing so, they will continue the pattern and practices described in this Complaint.

65.     Such pattern and practices threaten the Plaintiffs, Plaintiff Class and Green Party members with being banned from exercising their First Amendment rights in locations proximate to the President, Vice President, or other Secret Service protectees, despite the fact that pro-government demonstrators and/or other unscreened members of the public whose assembling does not involve expressive content will be allowed in such locations.

66.     Such pattern and practices threaten the Plaintiffs, Plaintiff Class and Green Party members with being subjected to having lawful and orderly demonstrations which they organize or in which they participate stopped, disrupted, and assaulted in the manner that occurred in the October 14, 2004, Jacksonville demonstration.

67.     The aforesaid threats inhibit Plaintiffs, Plaintiff Class members and Green Party members from organizing and participating in such demonstrations, from encouraging others to do so, and from encouraging others to bring their children to these events as an educational democratic activity.

68.     The Plaintiffs and Plaintiff Class members have no adequate remedies at law for the injuries described in paragraphs 63-67 of this Complaint.

## CULPABILITY OF DEFENDANTS

69.     At the time that the Defendants took the aforesaid actions against them, class members were exercising Constitutional and common law rights and were not in violation of any law.  Defendants violated the constitutional and common law rights of the class members.  There was no reasonable or lawful basis for the Defendants to take such actions.

70.     The actions of Defendants were within the scope of their employment.

71.     The actions of the individual Police Defendants were under color of state law.

72.     Defendants Towe, Rodriguez, Winters and the other individual State and Local Police Defendants personally directed and approved of the actions of the police against the class, and personally directed and approved of permitting the pro-Bush demonstrators and unscreened

Page 18 – Class Action Complaint

diners and guests inside the Jacksonville Inn to remain in the vicinity undisturbed and unrestricted.

73.    The Police Defendants' actions were the custom, policy or practice of the State of Oregon, Defendants City of Jacksonville and Jackson County and Municipal Does, respectively, or were established as such by the individual Police Defendants in taking those actions. The individual Police Defendants had the final decision-making authority and responsibility for establishing the policies of their respective employers. The individual Police Defendants' decisions to order and implement the aforesaid police actions constituted the official policy of their respective public employers.

74.    The rights that class members were exercising and the fact that the Defendants' actions against them violated those rights were clearly established and well settled law as of October 14, 2004. Accordingly, there was no reasonable basis for Defendants to believe and there was no good faith belief that the Defendants' actions were lawful.

75.    The Defendants' actions against the class were the result of inadequate training, supervision, instruction and discipline of the Secret Service agents under the direction of Defendant Basham and of the police officers under the directions of the State and Local Police Defendants. Such inadequate training, supervision, instruction and discipline are the custom and practice of the Defendants. By the practice or custom of failing to adequately train, supervise, instruct or discipline their police officers, the Defendants have condoned the violations of rights that are the subject of this action, and have thereby encouraged and ratified such conduct.

## FIRST CLAIM FOR RELIEF

### • Violation of First, Fourth, And Fifth Amendment Rights •

#### *Against the Secret Service Defendants Only*

76.    Plaintiffs reallege and incorporate by reference paragraphs 1-75 as if fully set forth herein.

77.    On information and belief, Defendants were acting jointly and in concert in taking the actions alleged.

78.    The individual Secret Service Defendants are liable to Plaintiffs and Plaintiff Class for compensatory damages under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), for the violation of their rights of freedom of speech, assembly, and association under the First Amendment to the United States Constitution, and of their rights to be free from unreasonable seizure and assault under the Fourth and Fifth Amendments, and for their attorney fees pursuant to 42 U.S.C. § 1988.

79.    The individual Secret Service Defendants acted willfully and maliciously, or with indifference or reckless disregard of class members' rights or safety, and plaintiffs are therefore entitled to an award of punitive damages in an amount to be proven at trial.

80.    Plaintiffs and Plaintiff Class are entitled to declaratory relief under 5 U.S.C. § 702 and to injunctive relief against all Secret Service Defendants and all persons acting as their agents or in concert with them.

## SECOND CLAIM FOR RELIEF

### • 42 U.S.C. §1983:  Violation of First, Fourth, and Fifth Amendment Rights •

#### *Against the State and Local Police Defendants*

81.    Plaintiffs reallege and incorporate by reference paragraphs 1-75 as if fully set forth herein.

82.    On information and belief, the State and Local Police Defendants were acting jointly and in concert and under color of state law to violate the Constitutional rights of Plaintiffs and Plaintiff Class.

83.    The State and Local Police Defendants are liable to the Plaintiffs and Plaintiff Class under 42 U.S.C. § 1983 for compensatory damages and attorney fees under 42 U.S.C. § 1988 for the violation of their rights of freedom of speech, assembly and association under the First Amendment to the United States Constitution, and of their rights to be free from unreasonable

Page 20 – Class Action Complaint

seizure and assault under the Fourth and Fifth Amendments, and to all these rights as incorporated and applied through the Fourteenth Amendment.

84.    The individual Police Defendants acted willfully and maliciously, or with indifference or reckless disregard of class members' rights or safety, and Plaintiffs are therefore entitled to an award of punitive damages in an amount to be proven at trial.

85.    Plaintiffs and Plaintiff Class are entitled to declaratory and injunctive relief against the Police Defendants and all persons acting as their agents or in concert with them.

## THIRD CLAIM FOR RELIEF

### • Violation of Rights Under Oregon Constitution •

#### *Against the State and Local Police Defendants*

86.    Plaintiffs reallege and incorporate by reference paragraphs 1-75 as if fully set forth herein.

87.    The State and Local Police Defendants are liable to the Plaintiffs for compensatory damages for the violation of their rights under the Oregon Constitution, Article I, Sections 8, 9, 20 and 26.

88.    Plaintiffs and Plaintiff Class are entitled to declaratory and injunctive relief against the State Police and Local Police Defendants, and to attorney fees pursuant to *Armatta v. Kitzhaber*, 327 Or 250 (1998).

## FOURTH CLAIM FOR RELIEF

### • Violation of Oregon Common Law •

#### *Against the State and Local Police Defendants*

89.    Plaintiffs reallege and incorporate by reference paragraphs 1-75 as if fully set forth herein.

90.    The State and Local Police Defendants are liable to the Plaintiffs and Plaintiff Class for compensatory damages under the common law of Oregon for assault and battery, false imprisonment and negligence.

91.    Timely notices of claims were filed pursuant to the Oregon Tort Claims Act.

## PRAYER FOR RELIEF

**WHEREFORE**, the named Plaintiffs, on behalf of themselves and the Class, and the Green Party, request:

1.    An Order certifying this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, certifying the named Plaintiffs as class representatives and designating Martha L. Walters, Ralph J. Temple, Thane W. Tienson, and Arthur Spitzer as class counsel;

2.    Judgment declaring that the Defendants violated the rights of the class members under the United States Constitution, First, Fourth, Fifth and Fourteenth Amendment, and the Oregon Constitution, Article I, Sections 8, 9, 20 and 26;

3.    Compensatory damages against the individual Secret Service and all State and Local Police Defendants, jointly and severally;

4.    Punitive damages against the individual Defendants;

5.    Declaratory and injunctive relief prohibiting the United States Secret Service, Secret Service Defendants, State and Local Police Defendants, and all persons acting as their agents or in concert with them from engaging in the practice of, or continuing a pattern and practice of, or requesting or encouraging others to engage in the practice of:

      5.1    Barring or forcing a lawful assembly of people from any area where they have a lawful right to assemble, where there is no reasonable security reason to so bar or force them;

      5.2    Barring or forcing a lawful assembly of people from areas where other unscreened members of the public are allowed to congregate or be present;

Page 22 – Class Action Complaint

5.3    Barring or forcing anti-government demonstrators from areas where pro-government demonstrators are allowed to be present;

5.4    Using excessive force to move nonviolent persons;

5.5    Using riot-geared officers at nonviolent demonstrations; or

5.6    Using non-lethal weapons or any form of chemical agents against nonviolent demonstrators;

6.    Pre-and post-judgment interest on all amounts awarded;

7.    Attorney fees and costs pursuant to 42 U.S.C. § 1988 and *Armatta v. Kitzhaber*, 327 Or 250 (1998); and

8.    Such other and further relief, including injunctive relief, as is just and proper under the circumstances.

## JURY DEMAND

Plaintiffs request a jury trial for all issues so triable.


DATED this 3rd day of July, 2006.


WALTERS CHANTI & ZENNACHÉ, P.C.


By: _____
    Martha L. Walters, OSB #77315
    *Attorneys for Plaintiffs*
    Phone: 541-683-2506
    Facsimile: 541-683-3149
    mwalters@wczonline.com


Page 23 – Class Action Complaint