IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MOSS,
et al.,

        Plaintiffs,

    v.

UNITED STATES SECRET
SERVICE, Department of
Homeland Security,
et al.,

        Defendants.

Civil No. 06-3045-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

    Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and
Bivens v. Six Unknown Agents, 403 U.S. 388 (1971) alleging claims
for violations of the First, Fourth, Fifth, and Fourteenth
Amendments, as well as, state law claims for violations of the
Oregon Constitution, assault and battery, false imprisonment, and
negligence. Plaintiffs seek declaratory and injunctive relief,

compensatory and punitive damages, interest, attorney fees, and costs. (Id.). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

Before the court are State defendants' motion to dismiss (#52), County defendants' motion to dismiss (#53), Federal defendants' motion to dismiss, or, in the alternative for summary judgment (#62), Federal defendant's motion to dismiss (#68), and City defendants' motion to dismiss (#72). Based upon the following analysis, the court recommends that defendants' motions (#52, #53, #62, #68, and #72) be granted in part and denied in part. Specifically, the court finds that: 1) plaintiffs' allegations fail to establish plaintiffs have standing to seek prospective relief; 2) plaintiffs' substantive due process claims are barred as they are covered by the First and Fourth Amendments; 3) plaintiffs cannot seek damages for violations of the Oregon Constitution; 4) to the extent that plaintiffs are suing state officials in their official capacity for retrospective declaratory relief, plaintiffs' claims are barred by the Eleventh Amendment; 5) plaintiffs have failed to establish personal jurisdiction over defendant Basham; 6) plaintiffs' complaint fails to state a Fourth Amendment claim against defendants Wood and Savage; 7) taking plaintiffs' allegations as true, plaintiffs have pleaded a violation of clearly established First Amendment law by the federal defendants.

REPORT AND RECOMMENDATION - 2

## I.  **FACTS**

The following paragraphs paraphrase relevant portions of plaintiffs' amended complaint:

The individual plaintiffs are citizens of the United States and residents of Oregon who were in Jacksonville, Oregon, on October 14, 2004, participating in a demonstration to protest President George W. Bush's policies.    (Amended Complaint ¶2). Plaintiff Jackson County Green Party (JCGP) is an unincorporated association and a political party in Jackson County, Oregon, some of whose members participated in the October 14, 2004 demonstration in Jacksonville.  (Id. at ¶14).  JCGP's members regularly engage in demonstrations in Jackson County, and around the country, including at public appearances by senior federal officials protected by the United States Secret Service (Secret Service).  (Id.).

Plaintiffs seek declaratory and injunctive relief prohibiting the Secret Service defendants from engaging in the pattern of or continuing pattern and practice of, or requesting or encouraging others to engage in the practice of: barring or forcing a lawful assembly of people from any area where they have a lawful right to assemble, where there is no reasonable security reason to so bar or force them; barring or forcing a lawful assembly of people from areas where other unscreened members of the public are allowed to congregate or be present; barring or forcing anti-government demonstrators from areas where pro-government demonstrators are

allowed to be present; using excessive force to move nonviolent persons; using riot gear officers at nonviolent demonstrations; and using non-lethal weapons or any form of chemical agents against nonviolent demonstrators.    (Id. at ¶3).    Plaintiffs also seek declaratory and injunctive relief against the state and local police defendants in connection with their claims for violations of their First, Fourth, and Fifth Amendment rights, and declaratory and injunctive relief against the local police defendants in connection with violations of the Oregon Constitution.  (Id. at ¶84 and ¶87).  Plaintiffs also seek compensatory damages against local police in connection with violations of the Oregon Constitution. (Id. at ¶86).

Defendant Basham was the Director of the United States Secret Service on October 14, 2004, acting within the scope of his employment and under color of law.    (Id. at ¶16).    He was responsible for directing the operations of the Secret Service and supervising all Secret Service agents.  (Id.).  He is sued in his individual capacity.  (Id.).

Defendants Wood and Savage were Secret Service agents at the scene of the October 14, 2004 demonstration, acting within the scope of their employment and under color of law.  (Id. at ¶17). They were assigned to provide security for President George W. Bush, and directing, requesting, and communicating with other defendants in their operations related to the October 14, 2004

REPORT AND RECOMMENDATION - 4

demonstration.    (Id.).    They are sued in their official and individual capacities.  (Id.).

On October 14, 2004, President Bush made a campaign appearance in Central Point, Oregon.  (Id. at ¶36).  He was scheduled to spend the evening at the Jacksonville Inn Honeymoon Cottage, located approximately two blocks from the Jacksonville Inn, in Jacksonville, Oregon.  (Id.).

Plaintiffs Elkovich and Boyd organized the demonstration to take place in Jacksonville, Oregon on the afternoon and evening of October 14, 2004.  (Id. at ¶37).  The demonstrators planned to march from Griffin Park along a certain route to the sidewalks in front of and across the street from the Jacksonville Inn.  (Id.).

Before the demonstration, plaintiff Elkovich spoke with the Chief Towe of the Jacksonville Police Department and Sheriff Winters of Jackson County regarding the details of the planned demonstration and the route the demonstrators planned to take. (Id. at ¶38).  Plaintiff Elkovich also informed them that parents and their young children would be participating in the demonstration.  (Id.).  Chief Towe and Sheriff Winters assented to the route and the location of the demonstration.  (Id.).

At about 6:00 p.m., the anti-Bush demonstrators made there way along the designated route to the sidewalks in front of the Jacksonville Inn and across the street from the Jacksonville Inn. (Id. at ¶¶43 and 44).  Plaintiffs conducted their demonstration

REPORT AND RECOMMENDATION - 5

with chants, slogans, and signs.  (Id. at ¶44).  Plaintiffs were orderly, interacted with the police without incident, and remained on the sidewalks.  (Id.).

Groups of pro-Bush supporters were located just over one block from the anti-Bush demonstrators, just west of Third Street on the north side of California Street.  (Id. at 45).  Interactions between the pro and anti Bush demonstrators were courteous.  (Id.).

While the President was en route to Jacksonville, he decided to dine at the Jacksonville Inn.  (Id. at ¶47).  Shortly after 7:00 p.m., state and local police began restricting the movements of some of plaintiffs by not allowing them to cross the street, leave the sidewalks, and join other plaintiffs on the sidewalks in front of or across the street from the Jacksonville Inn.  (Id. at ¶48).

At about 7:15, President Bush entered the Jacksonville Inn's back patio and began dining in the fenced patio area.  (Id. at ¶49).  Also present inside the Jacksonville Inn and on the patio were dozens of guests and diners, who were not screened or ordered or forced to leave the vicinity.  (Id.).

At approximately 7:30 p.m., after plaintiffs' chants and slogans could be heard by the President on the patio of the Jacksonville Inn, the Secret Service defendants requested or directed Chief Towe and other police to move the demonstrators from the sidewalks in front of and across the street from the Jacksonville Inn.  (Id. at ¶50).  The reason given was that they

REPORT AND RECOMMENDATION - 6

did not want anyone within handgun or explosives range of the President. (Id.).

Pro-Bush demonstrators and unscreened guests and diners of the Jacksonville Inn were located within the same or in more accessible vicinity to the President than plaintiffs. (Id. at ¶51). Secret Service defendants did not direct or request the other police defendants to move or screen the pro-Bush demonstrators or the unscreened guests and diners at the Jacksonville Inn. (Id.).

At approximately 7:45 p.m., the police formed a line of riot-geared police officers on Third Street blocking California Street. (Id. at ¶52). An armored personnel carrier was located behind the police line. (Id.). The police made amplified announcements, which were unintelligible to many of plaintiffs, announcing that the assembly was now unlawful and ordering plaintiffs to move from the sidewalks where they were assembled to the east side of Fourth Street. (Id.).

The police officers then forced the anti-Bush demonstrators to move east along California Street, in some cases violently shoving plaintiffs, striking them with clubs, and firing pepper spray bullets at them without first ascertaining whether plaintiffs understood the announcements or allowing plaintiffs, comprising a crowd of about 200 people, time to move. (Id. at ¶53). The police forcefully moved the plaintiffs using clubs, pepper spray bullets, and shoving until the all the plaintiffs had crossed Fourth Street

REPORT AND RECOMMENDATION - 7

and then moved to the east side of Fifth Street.  (Id. at ¶54).

After moving plaintiffs across Fifth Street, the police divided plaintiffs into two groups, encircling each group and preventing plaintiffs from leaving the area.  (Id. at ¶55).  Some plaintiffs, including those with young children present attempted to leave the area.  (Id.).  Some children were separated from their families.  (Id.).  During the time these actions were taken against plaintiffs, the defendants did not take any action to move pro-Bush demonstrators or the unscreened guests and diners inside the Jacksonville Inn.  (Id. at ¶56).

The actions of the Secret Service defendants in Jacksonville on October 14, 2004 were part of an officially authorized pattern and practice to employ or assist in employing, or directing, requesting, or encouraging state and local authorities to employ or assist in employing the pattern and practice described as follows: barring or forcing a lawful assembly of people from any area where they have a lawful right to assemble, where there is no reasonable security reason to so bar or force them; barring or forcing a lawful assembly of people from areas where other unscreened members of the public are allowed to congregate or be present; barring or forcing anti-government demonstrators from areas where pro-government demonstrators are allowed to be present; using excessive force to move nonviolent persons; using riot gear officers at nonviolent demonstrations; and using non-lethal weapons or any form

REPORT AND RECOMMENDATION - 8

of chemical agents against nonviolent demonstrators.    (Id. at ¶¶3 and 57).

Secret Service defendants have promulgated written guidelines, directives, instructions and rules prohibiting Secret Service agents from discriminating between anti-government and pro-government demonstrators, and between demonstrators and members of the public not engaged in expressive assembly do not represent the actual policy and practice of the Secret Service. (Id. at ¶¶58 and 59).

The written guidelines, directives, instructions, and rules do not represent the actual policy and practice of the Secret Service defendants.    (Id. at ¶59).    Despite numerous episodes and complaints, and several lawsuits concerning the "officially authorized pattern and practices", Secret Service agents have engaged in such actions and have not been disciplined or corrected from engaging in such actions.    (Id.).    The written guidelines, directives, instructions, and rules are a sham designed to immunize from judicial review the unlawful and unconstitutional patterns and practices the Secret Service employs.    (Id. at ¶60).

As a result of the actions of the defendants, plaintiffs suffered damages in the form of loss of their constitutional rights under the U.S. and state constitutions, their common law rights, physical and emotional injuries, pain and suffering. (Id. at ¶61).

REPORT AND RECOMMENDATION - 9

Plaintiffs desire and intend to continue to demonstrate peacefully in proximity to federal officials who are protected by the Secret Service, both in Jackson County, Oregon and elsewhere. (Id. at ¶62).  It is likely and foreseeable that plaintiffs will again be harmed by the practices described in the complaint. (Id.).

Plaintiffs are under a real and immediate threat that, unless the defendants are enjoined from doing so, they will continue the pattern and practices described in the complaint.  (Id. at ¶63). Such pattern and practice threatens plaintiffs with being banned from exercising their First Amendment rights in locations proximate to the President, Vice President, or other Secret Service protectees, despite the fact that pro-government demonstrators and/or other unscreened members of the public whose assembling does not involve expressive conduct will be allowed in such locations. (Id. at ¶64).  Such pattern and practices threatens plaintiffs with being subjected to having lawful and orderly demonstrations which they organize or in which they participate stopped, disrupted, and assaulted in the manner that occurred at the October 14, 2004 demonstration in Jacksonville, Oregon.  (Id. at ¶65).

The above threats inhibit plaintiffs from organizing and participating in demonstrations, from encouraging others to do so, and from encouraging others to bring their children to these events as an educational democratic activity.  (Id. at ¶66).  Plaintiffs

REPORT AND RECOMMENDATION - 10

have no adequate remedy at law.  (Id. at ¶67).

The defendants' actions against plaintiffs were the result of inadequate training, supervision, instruction and discipline of the Secret Service agents under the direction of defendant Basham. (Id. at ¶74).  Such inadequate training, supervision, instruction and discipline are the custom and practice of the defendants. (Id.).  By the practice or custom of failing to adequately train, supervise, and discipline officers, defendants have condoned the violation of rights that are the subject of this action, and have encouraged and ratified such conduct.  (Id.).

Plaintiffs allege defendants Basham, Wood and Savage are liable for violating plaintiffs' rights of freedom of speech, assembly, and association under the First Amendment, and plaintiffs' rights to be free from unreasonable seizure and assault under the Fourth and Fifth Amendments.  (Id. at ¶77).  Plaintiffs allege these defendants acted willfully and maliciously, or with indifference or reckless disregard of plaintiffs' rights or safety. (Id. at ¶78).

## II.  **LEGAL STANDARDS**

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3rd Cir. 2000). The defendants make a facial challenge to jurisdiction.

REPORT AND RECOMMENDATION - 11

In a facial challenge to jurisdiction, all the factual allegations concerning jurisdiction are presumed true, and the motion is successful if the plaintiffs fail to allege an element necessary for subject matter jurisdiction. <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993)(citation omitted). When jurisdictional challenges are based solely upon the complaint, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim. <u>Hanford Downwinders Coalition, Inc. v. Dowdle</u>, 841 F.Supp. 1050, 1056 (E.D.Wash. 1993), <u>affirmed</u>, 71 F.3d 1469 (9th Cir. 1995), <u>affirmed</u>, 76 F.3d 385 (9th Cir. 1996).

The party asserting jurisdiction bears the burden of establishing jurisdiction. <u>Dowdle</u>, 841 F.Supp. at 1057 (citation and quotations omitted). It is presumed that the federal court lacks jurisdiction until it is established. <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 US 375, 377 (1994); <u>La Reunion Francaise SA v. Barnes</u>, 247 F.3d 1022, 1026 (9th Cir. 2001).

On a motion pursuant to Rule 12(b)(6), a complaint may be dismissed because of the lack of a cognizable legal theory or because insufficient facts are alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). The court accepts plaintiff's material allegations in the complaint as true and construes them in the light most favorable to plaintiff. <u>Sands v. Lewis</u>, 886 F.2d 1166

REPORT AND RECOMMENDATION - 12

(9th Cir. 1989); Gorham v. Banovetz, 652 F.2d 750 (8th Cir. 1981).

The court does not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988, opinion amended on denial of rehearing, 275 F.3d 1187 (9th Cir. 2001)(citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." National Ass'n. for the Advancement of Psychoanalysis v. California Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000), cert. denied, 532 U.S. 972 (2001).

## III.  **DISCUSSION**

Defendants move to dismiss plaintiffs' claims for injunctive relief pursuant to Rule 12(b)(1) and Rule 12(b)(6) collectively arguing that:

1) plaintiffs lack standing to prosecute their claims for prospective injunctive relief;

2) plaintiffs' claims for prospective relief are not ripe;

3) plaintiffs fail to allege sufficient facts to support their equitable claims.

State defendants make the following additional arguments:

1) insofar as plaintiffs' complaint could be construed as asserting a claim for prospective declaratory relief, it suffers from the same defects as plaintiff's claims for prospective injunctive relief; and

REPORT AND RECOMMENDATION - 13

2) any claims for retrospective declaratory relief as they pertain to the state defendants in their official capacities is barred by the state's Eleventh Amendment Immunity.

County defendants make the following additional arguments:

1) damages are not recoverable for alleged violations of the Oregon Constitution; and

2) plaintiffs' second claim for injunctive relief should be dismissed because plaintiffs have an adequate remedy at law.

The City defendants also argue that plaintiffs have an adequate remedy at law.

The individual federal defendants Basham, Wood, and Savage, move to dismiss, or, in the alternative for summary judgment, based on lack of personal jurisdiction and qualified immunity arguing that:

1) defendant Basham should be dismissed for lack of personal jurisdiction - he is not a resident of Oregon, does not consent to jurisdiction, lacks minimum contacts with Oregon, any actions taken by Basham took place in Washington, D.C., none of the alleged acts or omissions were purposefully directed at the State of Oregon or its residents, and general supervisory authority and promulgation of national policies is insufficient to establish jurisdiction;

2) defendants Basham, Savage, and Wood should be dismissed on the ground of qualified immunity - plaintiffs' complaint does not establish that the individual federal defendants violated clearly

REPORT AND RECOMMENDATION - 14

established constitutional rights - plaintiffs fail to allege any personal participation by defendant Basham and have failed to allege sufficient facts to hold him liable under the theory of "supervisory liability", plaintiffs' allegations that defendant Basham failed to train subordinates and that this custom or practice resulted in the actions taken against plaintiffs is insufficient to overcome qualified immunity, plaintiffs have not alleged defendant Basham made a deliberate or conscious choice not to train subordinates and that such a choice amounted to deliberate indifference, plaintiffs' allegations are only conclusory, plaintiffs fail to allege that defendant Basham failed to enforce the Secret Service's non-discrimination policy or was deliberately indifferent to the need to modify it, and plaintiffs' allegations that the written policy is a sham is only a conclusory allegation; 3)to the extent that plaintiffs seek to challenge actions taken by defendants Savage and Wood under the Fifth Amendment's substantive due process component based on an allegedly unreasonable seizure and assault, these claims fail as the Fourth Amendment explicitly provides for protection against claims of excessive use of force and unlawful seizures;

4) defendants Savage and Wood are not liable for plaintiffs' claims of unreasonable seizure and excessive use of force as they did not personally participate in any of the alleged actions, all actions were taken exclusively by local law enforcement defendants,

REPORT AND RECOMMENDATION - 15

plaintiffs only allege that defendants Wood and Savage requested local law enforcement personnel to clear demonstrators from the area near the Jacksonville Inn, and plaintiffs have not claimed that defendants Wood and Savage directed local law enforcement defendants to sue excessive force or subject demonstrators to an unreasonable seizure, and defendants Wood and Savage are entitled to presume that local law enforcement defendants would carry out their instructions in a lawful manner;

5) the actions taken by defendants Wood and Savage were undertaken in furtherance of the significant government interest of presidential security, the actions of defendants Savage and Wood were narrowly tailored to serve the interest of presidential security as they requested everyone on California Street immediately in front of the Jacksonville Inn and patio be relocated to the east side of Fourth Street, relocating the demonstrators was a minimal intrusion, the demonstrators had ample alternative channels for communication of the information even with being relocated east of Fourth or Fifth Streets, defendants Savage and Wood's actions were content neutral as they were undertaken for presidential security, they requested that all demonstrators in a specified area be moved regardless of the content of their speech, they made no distinctions between persons located in that specific area, the fact that defendant Savage and Wood's actions had a greater impact on plaintiffs does not amount to a violation of the

REPORT AND RECOMMENDATION - 16

First Amendment, the pro-Bush demonstrators were located a block away from the president and did not have a direct line of site, while plaintiffs were on the same block as the president with a direct line of site - the demonstrators were dissimilarly situated, there is nothing in plaintiffs' complaint to support that guests and diners at the Jacksonville Inn posed a security concern because there was no prior notice that the president intended to dine there, the fact that diners and guests were allowed to remain was a content-neutral exemption and did not violate the First Amendment, the actions attributed to defendants Wood and Savage did not violate clearly established First Amendment rights, there are no cases to support that the Secret Service establishing a security perimeter and removing persons within the perimeter violates the First Amendment, and determining whether the First Amendment is violated requires a delicate balancing test and the law in the time, place, and manner context is rarely clearly established; 6) defendants are entitled to summary judgment based upon the complaint, and the declarations of defendants Savage and Wood, and the affidavit of defendant Towe.

In response to the individual federal defendants Basham, Wood, and Savage's motion to dismiss, plaintiffs argue that: 1) the court has specific personal jurisdiction over defendant Basham - Basham purposefully directed his activities at Oregon and his activities meet the "effects" test: Basham intentionally

REPORT AND RECOMMENDATION - 17

formulated an unofficial policy and practice that discriminates based upon content and viewpoint of the protestor's message - Basham aimed this unofficial policy and practice at Oregon as it was of national application - this unofficial policy harmed the demonstrators in Oregon - Basham knew the application of this policy would result in suffered harm in Oregon upon the President visiting Oregon;

2) plaintiffs' claims arise out of Basham's Oregon-related activities: "but for" Basham's contact with Oregon plaintiffs would not have been injured as they would not have been subjected to his unwritten policy;

3) the court's exercise of jurisdiction over Basham is reasonable: Basham cannot meet his burden of showing that exercise of jurisdiction does not comport with "fair play and substantial justice"; plaintiffs are seeking jurisdiction over a defendant who formulated an unofficial policy, they are not seeking to hold Basham vicariously liable for the acts of subordinates; jurisdiction over Basham is not based solely on his supervisory status;

4) the individual defendants engaged in viewpoint discrimination in violation of clearly established First Amendment law when they singled out anti-Bush protestors and had them forcefully removed so that they would no longer be in ear-shoot of the president; the individual defendants ordered local law enforcement to disperse a

REPORT AND RECOMMENDATION - 18

peaceful demonstration using riot police equipped with clubs and guns shooting pepper spray; such behavior shocks the conscience and supports a substantive due process claim; viewing the facts of the amended complaint in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor, the individual defendants are not entitled to qualified immunity - their conduct entails triable issues of fact; plaintiffs' rights under the First, Fourth, and Fifth Amendments were so clearly established that a reasonable officer would know that their conduct was unlawful; defendant Basham created and implemented an unwritten policy and practice of viewpoint discrimination; defendants Savage and Wood enforced and perpetuated that policy; plaintiffs' right to protest is clearly established; viewpoint discrimination is a violation of clearly established First Amendment rights; defendants' time, place, and manner analysis is not applicable because the restrictions at issue were not content neutral; defendant Basham intended to interfere with plaintiffs' First Amendment rights by creating and implementing a n unwritten plan and practice encouraging and requiring viewpoint discrimination; defendants Savage and Wood intended to interfere with plaintiffs' First Amendment rights by enforcing and perpetuating Basham's unwritten policy and practice; defendants' actions would have a chilling effect on people; any reasonable official would know that viewpoint discrimination violates the First Amendment; and presidential

REPORT AND RECOMMENDATION - 19

security does not justify viewpoint discrimination;

5) the individual defendants violated clearly established Fourth Amendment law when they intentionally or recklessly ordered local law enforcement to disperse peaceful protestors using riot geared police, clubs and pepper spray; viewing the facts in the light most favorable to plaintiffs the amount of force used was excessive; the Fourth Amendment analysis is plagued with factual issues which precludes resolution at this stage of the proceedings; the right to be free from excessive use of force was clearly established and a reasonable official would know that the use of riot police, clubs and pepper spray on peaceful protestors violates the Fourth Amendment;

6) viewing the facts in the light most favorable to plaintiffs defendants Wood and Savage violated plaintiffs' clearly established Fifth Amendment rights by depriving plaintiffs of their liberty and life interests in subjecting plaintiffs to the unreasonable use of force[1]; defendants actions in singling out peaceful anti-Bush protestors and unleashing riot gear police with clubs and pepper spray on them shocks the conscience; a reasonable officer would know that such behavior violates the Fifth Amendment;

7) summary judgment is not appropriate at this time as plaintiffs have not completed discovery on the limited issue of qualified

_____

[1] Plaintiffs are not pursuing any Fifth Amendment claims against defendant Basham.

REPORT AND RECOMMENDATION - 20

immunity.

In response to the remaining motions to dismiss, plaintiffs argue that:

1) plaintiffs have standing to seek prospective injunctive relief because plaintiffs have allege that: defendants have an unwritten policy of discriminating against protestors; plaintiffs desire and intend to protest in the future; and defendants have repeatedly engaged in injurious acts in the past - such allegations were found sufficient in Marbet v. City of Portland, 2003 WL 23540258 (D.Or. 2003);

2) Elend is not applicable as that court followed Eleventh Circuit precedents which require a "high degree of immediacy", while the Ninth Circuit does not have such a requirement;

3) Acorn is not persuasive as it provides little reasoning and misstates the holding in Lyons by requiring plaintiffs to allege future harm at some identifiable future time and place which is not required by the Ninth Circuit;

4) plaintiffs seeking injunctive relief in Fist Amendment cases do not bear a heavy burden to demonstrate a threat of specific future harm as the unlawful conduct may deter the exercise of First Amendment rights;

5) plaintiffs claims are ripe for review - under defendants' theory plaintiffs' claims would never be reviewed as the President does not announce his schedule very far in advance and plaintiffs cannot

REPORT AND RECOMMENDATION - 21

specify with certainty a date, time, and location of the next
Presidential event at which they would protest;

6) plaintiffs remedies at law are inadequate as money damages
cannot fully compensate them for loss of their First Amendment
rights; and

7) this court should find that <u>Hunter v. City of Eugene</u>, 309 Or 298
(1990) is no longer good law in light of <u>Scoville by and Through</u>
<u>Hubbard v. City of Astoria</u>, 324 Or. 159 (1996) and <u>Smothers v.</u>
<u>Gresham Transfer, Inc.</u>, 332 Or. 83 (2001) and allow plaintiffs to
seek damages under the Oregon Constitution.

In reply, individual federal defendants Basham, Wood, and
Savage argue that:

1) plaintiffs have not established personal jurisdiction over
defendant Basham; Basham is not a resident of or domiciled in
Oregon; Basham does not consent to jurisdiction; Basham was not
physically present in Oregon on the date of the demonstration;
plaintiffs cannot satisfy the three-prong test set forth in
<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th
Cir. 2004) - plaintiffs complaint does not support that Basham
purposefully directed his activities toward Oregon under the
"effects" test; there is no allegations in plaintiffs' complaint
that Basham engaged in wrongful conduct targeted at plaintiffs whom
he knew to be residents of Oregon; plaintiffs facts regarding
formulation of a policy are conclusory and do not appear in the

REPORT AND RECOMMENDATION - 22

complaint; there are no allegations in the complaint to support that Basham expressly aimed or targeted the policy specifically at plaintiffs in Oregon - the complaint allegations only state it is a national policy which is insufficient;

2) defendants are entitled to qualified immunity as there are no allegations in the complaint that defendants personally participated in the deprivation of plaintiffs' rights; plaintiffs' allegations that Basham created and implemented a policy of viewpoint discrimination do not appear in the complaint; even if this allegation is in the complaint ti is conclusory and does not demonstrate personal participation by Basham;

3) qualified immunity bars plaintiffs' Fourth and Fifth Amendment claims against defendants Wood and Savage; plaintiffs fail to allege these defendants were involved with the manner in which the crowd was dispersed; plaintiffs do not have a substantive due process claim as their claims fall under the First and Fourth Amendments; there are no allegations that defendants Wood and Savage directed local law enforcement officials to use any particular means to disperse the crowd - defendants Wood and Savage are not responsible for the acts of local law enforcement officers;

4) qualified immunity bars plaintiffs' First Amendment claim; defendants could have been reasonable under the multi-factor test in Ward; plaintiffs' allegations regarding viewpoint discrimination are conclusory and do not defeat a motion to dismiss; the actions

REPORT AND RECOMMENDATION - 23

by defendants Wood and Savage were justified without regard to
content and therefore, were content neutral; and there are no First
Amendment cases that clearly prohibited the conduct in question;
and

5) the individual federal defendants are entitled to summary
judgment based upon qualified immunity.

In reply, state defendants argue that:

1) plaintiffs have failed to allege a policy or pattern of conduct
regarding the state defendants - plaintiffs' allegations only
concern a pattern or practice of the Secret Service;

2) plaintiffs lack standing and the allegations of a policy or
pattern of conduct does not prevent dismissal - Marbet is
distinguishable from this case;

3) the requirement of a real and immediate threat of injury applies
to plaintiffs' claims for injunctive relief;

4) plaintiffs' class allegations do not defeat dismissal - there
are no new plaintiffs entering the class bringing fresh claims;

5) Elend and Acron are on point and persuasive;

6) Article III standing requirements apply to plaintiffs' First
Amendment claims - plaintiffs must allege a real and immediate
threat of injury even in First Amendment cases;

7) plaintiffs' claims for prospective relief are not ripe -
plaintiffs' civil rights claims are pending and will be reviewed
and resolved in these proceedings - hardship of withholding

REPORT AND RECOMMENDATION - 24

injunctive relief is minimal; and

8) plaintiffs' claims for equitable relief fail on the merits - plaintiffs have failed to allege a real and immediate threat.

In reply, County defendants make the following arguments:

1) Hunter remains good law and disposes of plaintiffs' claims for damages under the Oregon Constitution;

2) the "remedy clause" in the Oregon Constitution does not apply to plaintiffs' claims  for violations of the state constitution as they are not asserting common law rights that existed prior to the adoption of the Oregon Constitution and plaintiffs are not without a remedy as they may seek declaratory and injunctive relief for constitutional violations;

3) plaintiffs claims for injunctive relief should be dismissed as the claimed harm is to speculative to satisfy constitutional standing requirements - plaintiffs must show they are realistically threatened by a repetition of the alleged violation - plaintiffs have not demonstrated that County defendants have a written policy or pattern or practice of the behavior at issue;

4) plaintiffs' claims for injunctive relief are not ripe for adjudication as they are too speculative and hypothetical to be ripe;

5) plaintiffs have an adequate remedy at law as they can seek damages;

6) plaintiffs cannot avoid dismissal by arguing they lack discovery

REPORT AND RECOMMENDATION - 25

- plaintiffs' complaint must allege sufficient facts to establish standing.

In reply in support of their second motion to dismiss, Federal defendants argue that:

1) plaintiffs lack standing to sue for equitable relief because they allege no facts showing they personally face a real and immediate threat of future injury - plaintiffs do not allege that they have concrete plans to demonstrate in the immediate future at a specific event where the President or the Secret Service would be present and that during that future demonstration they would face a real and immediate threat of the Secret Service violating their rights in a similar manner - plaintiffs fail to allege that they have been subjected to this type of injury either before or since the October 2004 demonstration - plaintiffs allege only an unsubstantiated threat of possible future injury which is insufficient to establish standing;

2) plaintiffs argument regarding the need for discovery is meritless as plaintiffs must establish on the face of the complaint that they have standing;

3) the Supreme Court has only applied a "relaxed standard" for standing in cases involving "overbreath challenges", which is not the case here;

4) plaintiffs argument regarding class certification is also meritless as the named plaintiffs who represent the class must

REPORT AND RECOMMENDATION - 26

allege they have been personally injured; and

5) plaintiffs equitable relief claims are not ripe for review as their claims rest upon hypothetical future events that may not occur as anticipated or may not occur at all - there are no facts concerning future demonstrations or concrete plans for one - plaintiffs complaint also demonstrates that they did have advanced notice of the President's visit to Jacksonville so that they could plan a demonstration - plaintiffs fail to allege that they have sought relief in advance of a planned demonstration in Oregon or any where else and that they have been denied relief - plaintiffs do not allege any facts concerning any demonstrations after the October 2004 demonstration - plaintiffs may seek relief on sort notice before or during any demonstration as evidenced by the case law.

In reply, City defendants make the following arguments: 1) there are no facts to support a claim that plaintiffs will be subjected to security restrictions in the course of a demonstration within the City of Jacksonville - the President's visit was an isolated occurrence and there is no likelihood of future harm.

**Standing/Ripeness/Adequate Remedy**

Ripeness and standing are both aspects of the court's subject matter jurisdiction. See St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.), cert. denied, 493 U.S. 993 (1989); See also Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). Standing involves

REPORT AND RECOMMENDATION - 27

both constitutional and prudential limitations. Warth v. Seldin, 422 U.S. 490, 498 (1975); Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1057 (9th Cir. 2004)(citation omitted). Constitutional standing concerns whether the plaintiff satisfies Article III's case or controversy requirement. Id. The power of the courts to hear cases is restricted to actual cases and controversies. Flast v. Cohen, 392 U.S. 83, 94 (1968). There is no justiciable controversy when a party lacks standing to maintain an action. Id. at 94.

The party invoking jurisdiction has the burden of establishing the elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To establish Article III standing, the

> plaintiff must have suffered an injury in fact - an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-561.

In City of Los Angles v. Lyons, 461 U.S. 95, 107 (1983), the Supreme Court found that Article III's case and controversy requirement precludes federal courts from considering claims for equitable relief, including injunctions or declaratory judgments, unless the plaintiff can demonstrate that the threat of future

REPORT AND RECOMMENDATION - 28

injury is both real and immediate, not conjectural or hypothetical. The speculative nature of future injury precludes the requirement of a real or immediate threat. Id. Past exposure to illegal conduct does not in itself show a present case or controversy regarding prospective injunctive relief . . . if it is unaccompanied by any continuing, present adverse effects. O'Shea v. Littleton , 414 U.S. 488, 495- 496 (1974). Plaintiff's subjective fear of future injury is irrelevant. Lyons, 461 U.S. at 107 n. 8.

The plaintiff must demonstrate that he is realistically threatened by a repetition of his experience. Id. at 109. The plaintiff must allege that a credible threat exists that he again will be subjected to the specific injury for which he seeks injunctive or declaratory relief. Kolender v. Lawson, 461 U.S. 352, 355 n.3 (1983). This requires an individualized showing that there is a very significant possibility that the future harm will ensue. Sample v.Johnson, 771 F.2d 1335, 1343 (9th Cir. 1985), cert. denied, 475 U.S. 1019 (1986). A physical or theoretical possibility of a challenged action again affecting the plaintiff is not sufficient. Murphy v. Hunt, 455 U.S. 478, 482 (1982).

In Elend v. Sun Dome, Inc., 370 F.Supp.2d 1206, 1208 (M.D. Fla. 2005), affirmed, 471 F.3d 1199 (11th Cir. 2006), plaintiffs sought declaratory and injunctive relief to prevent the Secret Service from establishing protest zones at future political events.

REPORT AND RECOMMENDATION - 29

The court found that plaintiffs failed to allege the threat of real and immediate injury, and therefore, they lacked standing.  *Id*. Plaintiffs failed to allege that they desired to engage in protests at any future specific events.  *Id*. at 1209.  The complaint only alleged that the plaintiffs intended to engage in protests in future at the Sun Dome and other locations around the country where the president would appear.  *Id*.

The court found that these allegations were insufficient to show a treat of imminent injury.  *Id*.  The court found that the lack of allegations regarding any events they protested at since the incident at the Sun Dome or that there rights were violated at any protests in any other locations since the Sun Dome were fatal to their claim.  *Id*. at 1210.   The court found that a lack of these allegations contradicted any claim of a threat of a real and immediate injury.  *Id*.  The court also found that plaintiffs' allegations regarding their intent to protest at future presidential appearances without identifying any specific event or venue rendered there allegations speculative.  *Id*.

In *Acorn v. City of Philadelphia*, 2004 WL 1012693 at 1-2 (E.D.Pa), plaintiffs sought declaratory and injunctive relief barring the Secret Service and local police from treating anti-government protestors less favorably than pro-government protestors in the future.  Plaintiffs alleged that the Secret Service as a matter of standard practice treated anti-government protestors less

REPORT AND RECOMMENDATION - 30

favorably than pro-government protestors. Id. at *2. Plaintiffs provided numerous examples in which plaintiffs and others around the country were discriminated against in the past. Id. Plaintiffs were unable to specify a date and time of official events where future violations were likely to occur, but alleged that they usually could not learn of the scheduling of such events in sufficient time to enable them to obtain judicial relief. Id.

The court found that plaintiffs' complaint allegations were too amorphous to support the grant of an injunction. Id. at *3. The court found that if there were disputes in the future that those disputes could be resolved in the jurisdiction where the disputes took place, where a specific factual context could be developed. Id. The court found that the claims were not ripe for review and the court lacked subject matter jurisdiction. Id.

Ripeness is an aspect of the court's subject matter jurisdiction; therefore, lack of ripeness bars the court from hearing a claim. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.) cert. denied, 493 U.S. 993 (1989). The purpose of the ripeness doctrine is to prevent the courts, through avoidance of premature judicial review of administrative actions, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way. Ash Creek Mining v. Lujan,

REPORT AND RECOMMENDATION - 31

934 F.2d 240, 243 (10th Cir. 1991)(citations omitted). Ripeness is "peculiarly a question of timing," therefore, the court looks "at the facts as they exist today" when evaluating whether the controversy is sufficiently concrete to warrant intervention. <u>Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil and Gas Conservation of the State of Montana</u>, 792 F.2d 782, 788 (9th Cir. 1986).

Plaintiffs have alleged that they were involved in the October 14, 2004 protest. Plaintiffs have also alleged that they regularly engage in protests in Jackson County and around the country. Plaintiffs allege the Secret Service has a national pattern and practice of engaging in viewpoint discrimination. Plaintiffs allege the Secret Service has engaged in this type of behavior in the past and they have not been disciplined for it. Plaintiffs seek declaratory and injunctive relief prohibiting violations of their constitutional rights in the future. Plaintiffs also seek declaratory and injunctive relief against local law enforcement defendants to prevent future violations of their state and federal constitutional rights.

Plaintiffs allege that they desire and intend to continue to demonstrate in proximity to federal officials protected by the Secret Service. Plaintiffs also allege it is foreseeable that they will be harmed by the practices described in the complaint. Plaintiffs allege they are under a real and immediate threat unless

REPORT AND RECOMMENDATION - 32

defendants are enjoined from continuing the pattern and practices described in the complaint. Plaintiffs also allege that such pattern and practice threatens plaintiffs with being banned from exercising their First Amendment rights in locations near federal officials protected by the Secret Service. Plaintiffs allege that these threats inhibit plaintiffs from organizing demonstrations and encouraging others to do so or attend such demonstrations.

Plaintiffs' allegations are insufficient to support a claim for equitable relief. The threat of future injury to plaintiffs is based on an extended chain of speculative contingencies and some day intentions which are insufficient to support standing. Anoushiravani v. Fishel, 2004 WL 1630240 at *4 (D.Or.). The allegations in plaintiffs' complaint fail to establish that plaintiffs have standing to seek prospective relief. Although plaintiffs allege a pattern and practice of conduct by the Secret Service, plaintiffs have not alleged that they have been injured either before or after the October 14 demonstration or that they plan to demonstrate at any particular time or place in the future. Unlike the pattern and practice cases cited by plaintiffs, plaintiffs have not shown that they have been personally injured by this alleged pattern and practice, other than the at the October 14 demonstration. The lack of such allegations distinguishes this case from Marbet v. City of Portland, 2003 WL 23540258 (D.Or.) and other pattern and practice cases relied upon by plaintiffs. The

REPORT AND RECOMMENDATION - 33

lack of such allegations cannot be resolved by class certification.

Plaintiffs have not alleged any pattern or practice by local law enforcement agencies. Again the lack of such allegations distinguishes this case from Marbet.

Plaintiffs also argue that the court should apply a "relaxed" standard for standing on their First Amendment claims. However, as defendants point out this line of cases applies to challenges to statutes under the overbreadth doctrine. Peterson v. Nat'l Telecomms. and Info. Adm'n, 478 F.3d 626, 633-634 (4th Cir. 2007). This is not that type of challenge.

Plaintiffs subjective feelings of inhibition to participate in future demonstrations are not sufficient. Laird v. Tatum, 408 U.S. 1, 13-14 (1972). Plaintiffs have not pled a real and immediate threat. The court finds both Elend and Acron persuasive and directly on point. As in those cases, plaintiffs' allegations are insufficient to support standing to seek prospective relief.

The issuance of equitable relief also requires the likelihood of substantial and immediate irreparable harm and an inadequate remedy at law. O' Shea, 414 U.S. at 502. This requirement cannot be met where the threat of injury is conjectural and hypothetical, and there are adequate remedies at law. Id. The allegations in plaintiffs' complaint do not show that they have been previously subjected to the same type of conduct either before and after this incident. This is the only time they have been subjected to this

REPORT AND RECOMMENDATION - 34

type of treatment. Plaintiffs allegations demonstrate that plaintiffs cannot meet the requirement of showing any real or immediate threat that plaintiffs will be wronged again. See Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1042-1044 (9th Cir. 1999). In addition, plaintiffs have a claim for damages, and, therefore, have an adequate remedy at law. Lyons, 461 U.S. at 109, 113.

Based on the foregoing analysis the court finds that plaintiffs' claims for prospective declaratory and injunctive relief should be dismissed as plaintiffs lack standing, plaintiffs' claims are not ripe for review, and plaintiffs have an adequate remedy at law.

**Fifth Amendment Claims**

In Graham v. Connor, 490 U.S. 386 (1983), the court held that where there are explicit textual standards regarding a specific constitutional claim, there is no additional substantive due process claim. Since plaintiffs' claims arise out of an alleged unlawful seizure and use of force and viewpoint discrimination their claims under these facts are covered by the First and Fourth Amendments. Therefore, plaintiffs' Fifth Amendment claims should be dismissed.

REPORT AND RECOMMENDATION - 35

**Damages for Violations of the Oregon Constitution**

In <u>Hunter v. City of Eugene</u>, 309 Or. 298 (1990), the court found that persons whose rights under Article I, section 8 of the Oregon Constitution are violated may not bring an action for damages directly under the constitution, but are limited to existing common law, equitable, and statutory remedies.   <u>Hunter</u>, 309 Or. at 304.   Based on <u>Hunter</u>, the court finds that an action for damages may not be brought directly under the Oregon Constitution.    Therefore, plaintiffs' claims for compensatory damages under the Oregon Constitution should be dismissed.

**Eleventh Amendment Immunity**

To the extent that plaintiffs are suing state officials in their official capacity for retrospective declaratory relief, plaintiffs' claims are barred by the Eleventh Amendment.   <u>Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993).  Plaintiffs' claims for retrospective declaratory relief against any state officials in their official capacity should be dismissed.

**Personal Jurisdiction**

Plaintiff bears the burden of proof to establish jurisdiction. <u>See</u> <u>Flynt Distributing Co. v. Harvey</u>, 734 F.2d 1389, 1392 (9th Cir. 1984).  Plaintiff must satisfy two requirements.   <u>Colonial Leasing Company Of New England, Inc. v. Pugh Brothers Garage</u>, 735 F.2d 380, 383 (9th Cir. 1984).    First, the forum state must have an

REPORT AND RECOMMENDATION - 36

applicable statute conferring jurisdiction over nonresidents.  Id.
Second, the assertion of jurisdiction must comport with the
constitutional requirements of due process.  Id.

On a motion to dismiss for lack of personal jurisdiction,
plaintiff need only make a prima facie showing that personal
jurisdiction exists.  Haisten v. Grass Valley Medical Reimbursement
Fund, Ltd., 784 F.2d 1392, 1396 n. 1 (9th Cir. 1986).  A prima
facie showing means plaintiff has produced admissible evidence
which, if believed, would be sufficient to establish personal
jurisdiction.  WNS, Inc. v. Farron, 884 F.2d 200, 204 (5th Cir.
1989).  In deciding whether plaintiff has made a prima facie case,
uncontroverted allegations in the complaint are deemed true, and
factual conflicts in the parties declarations are resolved in
plaintiff's favor.  Schwarzenegger v. Fred Martin Motor Co., 374
F.3d 797, 800 (9th Cir. 2004).  All pleadings and declarations are
read in plaintiff's favor.  Landoil Resources v. Alexander &
Alexander Services, Inc., 918 F.2d 1039, 1043 (2nd Cir. 1990).

ORCP 4 allows jurisdiction over nonresident defendants to the
fullest extent permitted by the state and federal constitutions.
Colonial Leasing, 735 F.2d at 383.  If plaintiff's claim arises
from the defendant's forum-related activities, a court may assert
jurisdiction over the defendant if the plaintiff shows that the
defendant has the requisite minimum contacts.  World-wide
Volkswagon v. Woodson, 444 U.S. 286 (1980).  Those contacts must

REPORT AND RECOMMENDATION - 37

be such that maintenance of a suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The defendant's conduct and connection must be such that he should reasonably anticipate being hauled into court in the forum. World-wide Volkswagon, 444 U.S. at 297.

The Ninth Circuit has established a three-part test for analyzing whether the court may exercise specific personal jurisdiction over nonresident defendants:

1) the defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2) the claim must be one which arises out of or relates to defendant's forum-related activities; and

3) the exercise of jurisdiction must comport with fair play, substantial justice, and be reasonable.

Schwarzenegger, 374 F.3d at 801-802 (citation omitted); See Gray & Company v. Firstenberg Machinery Company, 913 F.2d 758 (9th Cir. 1990) (citation omitted).

REPORT AND RECOMMENDATION - 38

Purposeful availment applies in the contract context, while purposeful direction applies in the tort context.  Schwarzenegger, 374 F.3d at 802.  To show purposeful direction, plaintiffs need evidence that the defendant's actions, which occurred outside the forum state, were directed at the residents in the forum state. Id. at 803.  Defendant does not have to have any physical contacts with the forum state.  Id.  In evaluating purposeful direction, the court applies the three-part effects test, which requires defendant to (1) commit an intentional act; (2) expressly aimed at the forum state; and (3) causing harm that the defendant knows is likely to be suffered in the forum state.  Id.  (citation and quotations omitted).

In McCabe v. Basham, 450 F.Supp.2d 916, 924 (N.D.Iowa 2006), plaintiffs brought suit against defendant Basham alleging that Basham had a policy or practice of unlawful viewpoint discrimination.  This is the same allegation plaintiffs are making in this case.  The Iowa court found this allegation insufficient to support personal jurisdiction.  Id.  This court agrees.  As in McCabe, the complaint in this case does not allege that Basham was present in Oregon or had any contacts with Oregon.  Id. at 924. The complaint does not allege that Basham oversaw the demonstration in Jacksonville.  Id.  The complaint does not allege that Basham gave any instructions or was even aware that the demonstration was occurring.  Id.  There are no allegations of an advance meeting or

REPORT AND RECOMMENDATION - 39

planning regarding the demonstration.  Id.  Plaintiffs have alleged that Basham and the Secret Service have a nation-wide policy of engaging in viewpoint discrimination, but this standing alone is insufficient to establish that Basham purposefully directed activity towards Oregon or any of plaintiffs.  Id.  at 924, 926.

Plaintiffs have failed to establish personal jurisdiction over defendant Basham.  Id. at 924, 926; See Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1050-1051 (9th Cir. 1997)(finding that the court lacked jurisdiction over the FDA Director as he did not direct his activities at Arizona).  Therefore, defendants' motion to dismiss defendant Basham based upon lack of personal jurisdiction should be granted.

### §1983 Liability/Qualified Immunity

A defendant in a civil rights action must personally participate in the alleged wrongs in order to incur liability. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988); See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). Supervisory officials cannot be held liable for the acts of their subordinates unless a reasonable person in the supervisors position would have known that his conduct infringed upon the constitutional rights of the plaintiffs and his conduct was causally related to the constitutional violation committed by his subordinate. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).  A supervisor may held liable when he personally participates in the

REPORT AND RECOMMENDATION - 40

constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violations.   Id.   A causal connection can be established by showing a history of widespread abuse or when a supervisors improper custom or policy results in deliberate indifference to constitutional rights.   Id.   at 1235.   A causal connection can also be established by pleading facts which support an inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.   Id.

In connection with their constitutional claims, plaintiffs allege that the Secret Service defendants have a pattern of or a continuing pattern and practice of, or requesting or encouraging others to engage in the practice of:   barring or forcing a lawful assembly of people from any area where they have a lawful right to assemble, where there is no reasonable security reason to so bar or force them; barring or forcing a lawful assembly of people from areas where other unscreened members of the public are allowed to congregate or be present; barring or forcing anti-government demonstrators from areas where pro-government demonstrators are allowed to be present; using excessive force to move nonviolent persons; using riot gear officers at nonviolent demonstrations; and using non-lethal weapons or any form of chemical agents against nonviolent demonstrators.   (Id. at ¶3).   Plaintiffs allege that

REPORT AND RECOMMENDATION - 41

despite numerous episodes and complaints, and several lawsuits concerning these "pattern and practices", Secret Service agents have engaged in such actions and have not been disciplined or corrected from engaging in such actions. (Id. at ¶59).

Plaintiff allege that defendants Wood and Savage are Secret Service agents who were in charge of presidential security and directing, requesting, and communicating with other defendants in their operations related to the October 14 demonstration. (Id. at ¶16). Plaintiffs allege that the Secret Service defendants requested or directed that the October 14 demonstrators be moved from the side walks in front of and across from the Jacksonville Inn. (Id. at ¶50). Secret Service defendants did not direct or request that pro-Bush demonstrators or guests and diners at the Jacksonville Inn be moved or screened. (Id. at ¶51).

There are no allegations in the complaint supporting that defendants Savage or Wood directed local law enforcement to use excessive force on the demonstrators or unlawfully seize the demonstrators. The only allegations are that these defendants directed local law enforcement to move the crowd one block away from the Jacksonville Inn. Therefore, plaintiffs' Fourth Amendment claim against defendants Wood and Savage should be dismissed. See Gozalez, 325 F.3d at 1235-1236.

As to plaintiffs' First Amendment claim, there are allegations that defendant Wood and Savage directed local law enforcement to move the plaintiffs while allowing pro-Bush demonstrators and guests/diners of the Jacksonville Inn to remain in close proximity to the president and that this was done pursuant to the Secret Service's policy of viewpoint discrimination.  Taking plaintiffs' facts as true, that the Secret Service does have a viewpoint discrimination policy and that defendants Savage and Wood directed local law enforcement to move the demonstrators in furtherance of that policy, this demonstrates personal involvement by these defendants, at least as to the First Amendment claim.    See San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 971-975 (9th Cir.), cert. denied, 126 S.Ct. 796 (2005)(denying qualified immunity to deputy sheriff who directed subordinates to perform an  unreasonable execution of a search warrant).

Qualified immunity shields government agents from suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official.  Anderson v. Creighton, 483 U.S. 635, 637-39, 641 (1987); Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). The Supreme Court set forth a two-step analysis to address the issue of qualified immunity.  First, the court must ask whether the facts alleged by the plaintiff would establish a

REPORT AND RECOMMENDATION - 43

constitutional violation.  Saucier v. Katz, 533 U.S. 194, 207 (2001).  If this question is answered in the negative, then the analysis ends.

If a violation could be established under the facts alleged, the court will then consider whether the right was clearly established.  Id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.  The court must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Id. at 202.  If the law does not put an officer on notice that his conduct was clearly unlawful, then dismissal based on qualified immunity is appropriate.  Id.

Plaintiffs have alleged that defendant Savage and Wood, in accordance with unofficial custom and practice of the Secret Service, engaged in viewpoint discrimination in ordering local law enforcement officials to remove the demonstrators while allowing pro-Bush supporters and unscreened guest and diners to remain in the area.  Taking these facts as true, these allegations state a First Amendment claim.  See R.A.V. v. City of St. Paul, 505 U.S. 377, 391, (1992)(finding that the government cannot regulate speech based upon its content or favor one viewpoint over another).  It was clearly established in 2004 that viewpoint discrimination violates the First Amendment.  Id.  If in fact, as plaintiffs

REPORT AND RECOMMENDATION - 44

allege, defendants Wood and Savage ordered plaintiffs removed from the area based solely upon the content of their speech, than such conduct would violate clearly established law of which a reasonable officer would be aware.  See Hudgens v. NLRB, 424 U.S. 507, 520 (1976)(officials may impose reasonable time, place, and manner restrictions, but may not discriminate on the basis of content of the expression); See also Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995)(citation omitted)(parties engaged in impermissible viewpoint discrimination if "the specific motivating ideology or the opinion or perspective of the speaker [was] the rationale for the restriction.").   Therefore, federal defendants motion to dismiss plaintiffs' First Amendment claims should be denied.

### III.  RECOMMENDATION

Based on the foregoing, it is recommended that defendants' motions (#52, #53, #62, #68, and #72) be granted in part and denied in part as set forth in this recommendation.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  *Objections to this Report and Recommendation, if any, are due on June 21, 2007.  If objections are filed, any responses to the objections are due 14 days after*

REPORT AND RECOMMENDATION - 45

*the objections are filed*.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___7__ day of June, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 46