IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MICHAEL MOSS, et al,                                    Civ. No. 1:06-cv-03045-CL

                    Plaintiffs,

                                                        REPORT & RECOMMENDATION

        v.

UNITED STATES SECRET SERVICE of
the Department of Homeland Security, et al.,

                    Defendants.

_____

CLARKE, Magistrate Judge.

        Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging claims for violations of

the Fourth and Fourteenth Amendments and Oregon common law by the defendants. They seek

compensatory and punitive damages from the defendants for alleged unconstitutional, unlawful,

and tortious actions against Plaintiffs arising out of and related to the defendants' disruption of

Plaintiffs' lawful assembly and protest demonstration in Jacksonville, Oregon, on October 14,

2004. Plaintiffs filed their second amended complaint (#151) on October 15, 2009. This case

comes before the court on Plaintiffs' Motion for Class Certification (#289) pursuant to Fed. R.

Civ. P. 23.  Defendants David Towe, the city of Jacksonville, and Jackson County oppose the

motion. (#293, #295). For the reasons below, the motion is GRANTED only as to Plaintiffs'

claims of unlawful arrest under the United States Constitution and Oregon law and DENIED as

to all other claims.

## BACKGROUND

On October 14, 2004, former President George W. Bush made a campaign appearance in Southern Oregon. Plaintiffs, who had learned of the President's plan to visit Jacksonville, organized a demonstration to express their opposition to the President and his policies. Plaintiffs assert they communicated their plans with Defendant Towe of the City of Jacksonville and Defendant Winters of Jackson County. (#151, ¶¶40-41.) Around 6:00 pm, Plaintiffs, consisting of approximately 200 to 300 anti-Bush demonstrators, assembled on California Street between Third and Fourth Streets where the Jacksonville Inn (the "Inn") was located.

At approximately 7:00 pm, both pro-Bush and anti-Bush demonstrators learned of the President's decision to dine at the Inn rather than the Honeymoon Cottage. Demonstrators in both groups clustered to the north side of California Street in response to his change of plans. Prior to the President's arrival, state and local law enforcement officers cleared the alleyway behind the Inn to provide back entrance access and began restricting the movements of some of the demonstrators outside the Inn. Plaintiffs allege State and Local Defendants' law enforcement officers, dressed in riot gear, cleared the Third Street alley to the patio dining area and directly behind the Inn. Law enforcement officers blocked Third Street, including both the sidewalk north of California Street and the California Street alley running along the east side of the Inn. Law enforcement officers were stationed at the entrance of the California Street alley to prevent any unauthorized persons from entering the alley. (#151, ¶¶48-49). Plaintiffs allege that at approximately 7:30 pm, Secret Service agents asked local and state law enforcement officers to clear California Street between Third and Fourth Streets and move all persons in that area to the east side of Fourth Street and subsequently to the east side of Fifth Street. (#151, ¶53).

At approximately 7:45 pm a line of police officers in riot gear, including State and Local Defendants, formed across California Street, facing the anti-Bush demonstrators. These officers

made amplified announcements stating that the anti-Bush assembly was now unlawful and ordered the anti-Bush demonstrators to move. Plaintiffs allege that State and Local Defendants and law enforcement officers forcefully moved the anti-Bush demonstrators from their location without ascertaining whether the demonstrators heard or understood the announcements. In some instances, Plaintiffs allege, these officers were violent, striking some individuals with clubs and firing pepper spray bullets at them. (#151, ¶61.) Plaintiffs further allege that once they were moved beyond Fourth Street to Fifth Street, they were separated into two groups, and law enforcement officers encircled each group, preventing some demonstrators from leaving the area. Some families were separated in the process. (#151, ¶ 61.) Further, Plaintiffs claim, the defendants' actions and actions of the police officers, including the use of officers clad in riot gear against unarmed, law-abiding peaceful demonstrators, were unreasonable.

## STANDARD OF REVIEW

A plaintiff seeking to certify a class under Rule 23 must satisfy the threshold requirements of subsection (a) that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." The class must also fall within one of the three categories listed in Rule 23(b). Here, Plaintiffs seek class certification under subsection (b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). While the primary focus is not

Page 3 – REPORT & RECOMMENDATION

on the merits of the plaintiff's claims, courts "must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.,* 657 F3d 970, 980 (9th Cir. 2011) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011)). As the Supreme Court has stressed, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart,* 131 S. Ct. at 2551. In making its determination, "the court is bound to take the substantive allegations of the complaint as true," but may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975).

## DISCUSSION

Plaintiffs, on behalf of themselves and others similarly situated, allege that the defendants violated the United States Constitution and Oregon Law by: (1) using excessive force against Plaintiffs in violation of the Fourth and Fourteenth Amendments, (2) assaulting Plaintiffs in violation of Oregon Law, and (3) arresting members of the class without probable cause by encircling and restraining Plaintiffs in violation of both the Fourth and Fourteenth Amendments and (4) Oregon law (#289). The proposed class is defined as:

> [A]pproximately 200 to 300 people who were assembled on the sidewalk adjacent to and across the street from the Jacksonville Inn, between Third and Fourth Streets in Jacksonville, Oregon, on the evening of October 14, 2004, at or about 7:45 PM, when the Police Defendants forcibly moved the members of the Class from their positions to the east of Fourth Street and then east of Fifth Street through the use of what Plaintiffs allege was unconstitutionally excessive force, including violently shoving members of the class, striking them with clubs, and firing pepper spray bullets at them in violation of the Fourth and Fourteenth Amendments to the United States Constitution and then encircling the members of the Class and restraining the class members from leaving the area in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the law of Oregon. (#289).

## I.     Plaintiffs' claim is timely.

The defendants argue that Plaintiffs have not met the Rule 23 requirement that class certification be decided "at an early practicable time." F.R.C.P. Rule 23(c)(1)(a). However, in the interest of judicial economy, this Court specifically deferred addressing certification in its August 4, 2010, Findings & Recommendation in order to resolve pending motions to dismiss. (#178). Plaintiffs' motion could only be filed once the scope of the litigation had been narrowed to the meritorious claims and the status of all named parties had been determined. Thus, though it comes nine years after the filing of the initial complaint, this motion is timely.

## II.    Plaintiffs have satisfied all the elements of Rule 23(a).

### a.  Numerosity

F.R.C.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." In practice, the general criteria for numerosity is that joinder of the parties would be difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th. Cir. 1964). In Oregon, a class of more than 40 individuals is sufficient to meet this requirement. *Or. Laborers-Emp'r Health & Welfare Trust Fund v. Philip Morris, Inc,* 188 F.R.D 365, 372 (D. Or. 1998). Plaintiffs need not provide an exact number of class members, "so long as there are enough to make joinder impracticable." *Freedman v. Louisiana-Pac. Corp.,* 922 F. Supp 377, 398 (D. Or. 1996).  Here, Plaintiffs' class is sufficiently numerous under Rule 23. Though they do not provide an exact number of class members, their estimate of 200 to 300 people is well above the number required in this district.

### b.  Commonality

Commonality, which is to be construed permissively, is "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with

disparate legal remedies." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). In

other words, the existence of "a common nucleus of operative fact" is sufficient to meet the

commonality requirement of Rule 23. *Sorenson v. Concannon,* 893 F.Supp 1469, 1479 (D.Or.

1994). Further, "Rule 23(a) requires only that resolution of the common questions affect all or a

substantial number of the class members." *Id.* Here, there is sufficient commonality between the

claims of the class as all members shared in the same course of events that led to this lawsuit. At

the core of each claim are the common, salient facts pertaining to the actions of the police

officers and the events surrounding Plaintiffs' allegedly lawful group demonstration. As noted in

Plaintiffs' motion, all members of the class are asking the same legal questions, and answers to

these questions will impact, at a minimum, a substantial number of the class members.

### c.  Typicality

F.R.C.P. 23(a)(3) requires "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." The typicality requirement has been met "when each

member's claim arises out of the same course of events, and each member makes similar legal

arguments to prove the defendant's liability." *Cervantez  v. Celestica Corp.*, 253 FRD 562, 573

(C.D. Cal 2008) (citing *In re Paxil Litig.,* 212 F.R.D. 539, 550 (C.D. Cal. 2003)). However, the

claims of the named parties need not be "substantially identical" to those of the rest of the class.

*Hanlon,* 150 F.3d at 1020. The purpose of the typicality requirement is to ensure that the

interests of the named parties are aligned with the interests of the class so that the named parties'

pursuit of their own claims will benefit the class. 4 William B. Rubenstein, Newberg on Class

Actions §3 (5th ed. 2011).

The defendants argue that the different types of force each individual experienced during

the events in question make them unsuitable to serve as class representatives (#295); however,

this argument is not persuasive. While the claims of Plaintiffs Adam and Moss are not identical,

each is typical of the class as a whole as they were part of the same course of events, are stating

the same legal claims, and are making the same legal arguments as the rest of the class,

particularly as to the claims of unlawful arrest. (#289-1, 289-2). Any differences in physical

contact and injury, when those injuries arose out of the same course of events and involves a

similar legal claim, are not sufficient grounds for denying a class on typicality because all

individuals are asserting the same legal claim. *Multi-Ethnic Immigrant Workers Org. Network v.*

*City of Los Angeles,* 246 F.R.D. 621, 632 (CD. Cal. 2007). These similarities show that each

individual's pursuit of their own legal claims will benefit the class and will not undermine the

very purpose of the typicality requirement.

### d.  Adequacy of Representation

The court must ask two questions when determining whether class representatives are

legally adequate: "(1) do the named plaintiffs and their counsel have any conflicts of interest

with other class members and (2) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. Whether representatives are

adequate "depends on the qualifications of counsel for the representatives, an absence of

antagonism, a sharing of interests between representatives and absentees, and the unlikelihood

that the suit is collusive." *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir. 1994) (quoting *Brown v.*

*Ticor Title Ins. Co,* 982 F.2d 386, 390 (9th Cir. 1992)). There is no suggestion that named

Plaintiffs or counsel are inadequate to represent the class or that they have any significant

conflicts with the rest of the class. As Plaintiffs have shown, the named parties and counsel have

already vigorously pursued this litigation through multiple appeals over the course of nine years.

### III.   Only Plaintiffs' claims of unlawful arrest have met the Rule 23(b)(3) requirement of predominance of common law or fact.

This factor of Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" such that claims are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Predominance exists "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon,* 150 F.3d at 1022. This analysis rests on the "legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* Individualized damage calculations are not sufficient to defeat predominance. *Blackie,* 524 F.2d at 905. Predominance also does not require that common issues take up more than half the total time at trial; rather, it is a 'pragmatic' inquiry into whether there is a 'common nucleus of operative facts' to each class member's claim." *Clark v. Bonded Adjustment Co., Inc.*, 204 F.R.D. 662, 666 (E.D. Wa. 2002) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & P.* § 1778).

Plaintiffs allege that the defendants encircled demonstrators and restricted their movement in violation of their right to be free from unlawful arrest under the U.S. Constitution and Oregon Law. Both claims meet the predominance requirement of Rule 23(b)(3). Such claims have been certified as a class action by courts in the past. *See Vodak v. City of Chicago*, No. 03 C 2463, 2006 WL 1037151, at *10 (N.D. Ill. 2006) (granting class certification for claims of unlawful seizure and arrest because common questions of the defendants' conduct predominate); *Hickey v. City of Seattle*, 236 F.R.D. 659, 666-67 (W.D. Wa. 2006) (certifying a class of individuals who were seized and arrested during a demonstration by bifurcating the case and first analyzing defendants' conduct and facts common to the class and then assessing individual damages). As noted in the response of Defendant Jackson County, "restricting [Plaintiffs']

movement" and "'encircling' and 'preventing class members from leaving the area'" are common issues to all class members. (#295). These claims require one centralized inquiry into the events that unfolded during the protest and the actions of the police officers, and the determination of the defendants' liability will resolve the question of unlawful arrest for all class members' claims. Because these common questions are so central to the resolution of the claims of all the class members, they predominate over any other individual inquiries that may arise during the course of litigation. Further, any individual damage issues that may arise out of these claims can be addressed through a bifurcated trial if the defendants' liability is established.

In contrast, Plaintiffs' claims as to excessive force and assault are not appropriate for class certification because the individual questions predominate over the questions of law and fact common to the class. Plaintiffs rely on *Multi-Ethnic* to bolster their claim for certification on this issue; however, in that case, "the legality of the command decision [to use non-lethal force was] the overriding common question" that met the predominance requirement. 246 F.R.D. at 635. The court specifically noted that the decisions to actually use non-lethal force, such as batons, pushing, other non-lethal munitions, required an individualized inquiry. *Id.* It is this very distinction between the command decision and the individual acts of the police officers that led the court in *Multi-Ethnic* to certify the class on the excessive force claim: the command decision predominated over the individualized injuries.

Here, there is no such "command decision" that predominates over the individual decisions of law enforcement officers to use force. Though the officers were asked to move the demonstrators and "secure the perimeter," such a request is very different from the decision to authorize the use by all officers of non-lethal force against demonstrators. Plaintiffs' pleadings and subsequent filings further emphasize the individual nature of the inquiry regarding these

claims. As stated in the second amended complaint, the defendants, including officers clad in riot gear, "forced the anti-Bush demonstrators to move…, *in some cases* by violently shoving Plaintiffs class members, striking them with clubs and firing pepper spray bullets at them." (#151, ¶60) (emphasis added).  Other evidence in the record suggests that the decision to use force may have occurred on an officer-to-officer or person-to-person basis, depending a great deal on the demeanor of the individual demonstrator. (#57, ¶¶21-22). Thus, the assault and excessive force inquiries require individualized determinations into both the extent of the force used against each individual and the reason why each officer decided to use said force, which predominate over any common issues shared by the class. This adds a layer of complexity to the litigation that goes beyond making individual damage determinations. It is difficult to see how one could determine the defendants' liability for the class as a whole and adequately consider the defendants' potential defenses to each claim in a single class-level adjudication given the multiplicity of individual questions of law and fact. Accordingly, Plaintiffs' class certification is limited to those claims that involve the allegedly unlawful arrest of Plaintiffs in violation of Oregon law and the Fourth and Fourteenth Amendments.

**IV.    Plaintiffs' claims for unlawful arrest have met the Rule 23(b)(3) superiority requirement.**

In order to certify a class under Rule 23(b)(3), Plaintiffs must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rules specifically list four issues relevant to this finding:  (A) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (B) "the extent and nature of any litigation concerning the controversy already begun by or against class members," (C) whether it is desirable to concentrate "the litigation of the claims in the particular forum," and (D) "the likely difficulties in managing a class action." In order to

determine whether a plaintiff has met the superiority requirement, courts must engage in a comparative evaluation of the class action and "alternative forms of dispute resolution." *Hanlon,* 150 F.3d at 1023.

With regard to their claims for unlawful arrest, Plaintiffs have shown that class certification is superior in light of the factors set out in Rule 23(b)(3). As each individual's claim arises out of the same course of events in Jacksonville, Oregon, it is desirable to concentrate this action here. Given the narrow and shared nature of the claims presented here, there will likely be little difficulty in managing this class action or the legal issues this case presents. Any potential individual damage issues, as noted by the Plaintiff (#289, p. 9), can be addressed through a bifurcated trial. And, as exemplified by Plaintiff Moss, there seems to be little interest by members in pursuing separate, individual litigation. (#296). Finally, the small size of the potential damage awards suggest that separate litigation would not be economically feasible for other members of the class and may deter any litigation to remedy potential violations of their constitutional rights. *See Clark,* 204 FRD at 666 (E.D. Wa. 2002) (finding a class action to be a superior method for adjudication as many members of the class, due to the small size of the claims, would be unlikely to pursue individual litigation). As such, the class action is a superior method of adjudication on Plaintiffs' claims as to the violation of their rights to be free from unlawful arrest under both Oregon law and the U.S. Constitution.

As stated above, Plaintiffs' claims of excessive force and assault require individualized findings that make these claims difficult to manage in a class action setting. Thus, class-wide adjudication is not a superior method of resolving these claims under the criteria set out in Rule 23(b)(3).

## CONCLUSION

As discussed above, although Plaintiffs were able to meet all the criteria of Rule 23(a), their claims against the defendants for excessive force and assault fail to meet the predominance and superiority requirements of Rule 23(b)(3). It is unlikely that a class action would provide adequate answers to address these claims because the individualized inquiries predominate over the common questions of law. Thus, these claims are inappropriate for resolution on a class-wide basis as the management of such a class action would be undesirable and inferior to other methods of adjudication. However, Plaintiffs' claims of unlawful arrest are sufficiently cohesive to meet the criteria of both Rule 23(a) and 23(b)(3).

## RECOMMENDATION

Plaintiffs' Motion for Class Certification (#289) should be GRANTED as to their claims for unlawful arrest under Oregon law and the U.S. Constitution and DENIED as to their claims for excessive force and assault.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of August, 2015.

MARK D. CLARKE
United States Magistrate Judge